**STANDARD ACC. INS. CO. v. STANDARD SURETY & CASUALTY CO. OF NEW YORK.**

District Court, S. D. New York.
Aug. 4, 1931.

Hughes, Schurman & Dwight, of New York City (Ralph S. Harris, of New York City, Merritt U. Hayden, of Detroit, Mich., and Benjamin C. Loder, of New York City, of counsel), for plaintiff.

Rumsey & Morgan, of New York City (David Rumsey and Louis J. Wolff, both of New York City, of counsel), for defendant.

FRANK J. COLEMAN, District Judge (after stating the facts as above).

The question presented is whether the defendant by the mere use of its own corporate name in the casualty insurance and surety fields infringes any rights of the plaintiff. Before considering the degree of similarity

between the titles and the effect of it, certain preliminary facts should be recognized.

In the first place, the plaintiff has an exceedingly valuable good will built on almost fifty years of honest, intelligent, and conscientious service. From a small beginning it has steadily progressed until it is now in the foremost rank of such companies, and its success has been merited by the benefits which it has afforded its policyholders. Certainly a court should be eager to protect an asset so well earned.

Furthermore, the plaintiff has been diligent to prevent any loss to the defendant through having to choose another name. Before the defendant's incorporation, the plaintiff protested against the choice of name and immediately after the incorporation commenced this action.

On the other hand, it was convincingly proved that the defendant's name was chosen in good faith and without any desire to have it confused with the plaintiff's. The defendant's organizers had about nine years previously started a fire insurance company under the style "Standard Insurance Company of New York," and they still operate it under that name. When they decided to extend their activities to the casualty and surety fields, they caused the defendant to be incorporated under a title suggesting its relation to their older company, as was done in the "Ætna" and the "Continental" groups of companies. They had no intent to trade on plaintiff's good will and through confusion of names to get any business which would otherwise go to the latter.

Furthermore, aside from the use of its own corporate title, the defendant has done nothing to cause confusion. The advertisements, printing, emblems, slogans, etc., of the two companies and the locations of their various offices are as different as could reasonably be expected of two concerns in that line of business. I was well impressed by the president of the defendant and believe that there is no danger of the defendant's doing anything in the future to increase the confusion.

There is, of course, a strong similarity between the two names. While they have only one word in common, "Standard," that is the dominant element in each and, though not highly distinctive, is sufficient to cause some confusion in the minds of the general public. It is a common descriptive word connoting stability, general recognition, and conformity to established practice; and it to some extent suggests that the company issues the statutory standard form of policies.

In determining the effect of this similarity, due weight should be given to the system employed by casualty and surety companies in getting business. Unlike the life insurance companies, they make no direct appeal to the general public. The applications are brought to them by brokers or agents who have generally secured the business without regard to the company in which it is to be placed. At least 95 per cent. of all the persons who apply to the agents and brokers are not at all concerned about what company is to issue the policy; faith in the broker or agent and in the state insurance department is substituted for reliance upon the reputation of the individual company. As to them, the name of the company is not considered and its possible confusion with another is immaterial. The remaining 5 per cent. of the applicants (whose business, however, is 15 or 20 per cent. of the total) are practically all insurance experts, such as insurance managers of large industrial corporations, and they choose the company after an investigation of its record and resources. With them a mere similarity in names would generally be insufficient to cause confusion.

The good will of casualty and surety companies is, therefore, not so closely tied up to their names as is that of commercial companies or even life insurance corporations, and a similarity is not so important to them. The brokers, agents, and insurance managers who actually decide in what company to place the business are sufficiently familiar with the personnel, location, etc., of the various companies that they could not be misled by mere similarity of names as the general public would be. This is shown by the large number of insurance companies with very similar names. For instance, there are 15 companies having "Standard" as the first word of their titles and three having it as the second. There are 77 having "American" as the first word; 53, having "National"; 22, "United States"; 21, "Federal"; 21, "Central"; 20, "Farmers"; 17, "Fidelity"; 12, "Lumbermans"; 21, "Merchants"; 13, "Employers"; 14, "Home"; 10, "Industrial"; 17, "Bankers"; 24, "Western"; 12, "Security"; 16, "Pacific"; 11, "Liberty"; 15, "General"; 9, "Continental"; 14, "Southern."

In considering these numerous instances of similarity, it is important to have in mind that they include all lines of insurance except life, and that companies in different lines do

not compete with each other. There remain, however, many in the same lines with strikingly similar names; for example, in the casualty and surety line there are "General Casualty," "General Accident," "General Casualty and Surety," and "General Surety"; "Southern Casualty," "Southern Indemnity," "Southern Fidelity," and "Southern Surety"; "United States Guarantee," "United States Casualty," and "United States Fidelity and Guaranty." Furthermore, even where there is no competition because the companies are in different lines of insurance, the business is largely handled by the same brokers, agents, and insurance managers, and if the mere similarity of names were likely to cause confusion the practice would have been found objectionable for the reasons set forth in Yale Corp. v. Robertson (C. C. A.) 26 F.(2d) 972.

The conclusion that must be drawn, therefore, is that the possibility of confusing the general public is by no means the test to be applied, and that the professional insurance men and experts who are in a sense the plaintiff's public, are not likely to be misled merely by the degree of similarity in this case. The plaintiff contends, however, that the word "Standard" has through fifty years of use become so closely identified with the plaintiff that it has acquired a secondary meaning and would be understood, when used in connection with the casualty or surety business, as referring only to the plaintiff. The plaintiff has advertised extensively, but never to the general public. It has published house organs for its own agency force; has periodically circularized a large mailing list composed of the mailing lists of its own agents and averaging about 240,000 names; has advertised in the trade journals devoted to the casualty and surety business; and has spent $942,000 on all its advertising in the last seven years. In it the plaintiff has referred to itself as "The Standard" and the "Standard Accident Insurance Company." But as bearing on the question whether the word "Standard" has become synonymous with the plaintiff's name, it must be borne in mind that those to whom it was addressed were largely the class of brokers, agents, and insurance managers who were not only familiar but dealt with many other insurance companies having it as the first word of their titles. It is true these other companies were, with one exception, not in the casualty and surety line, but they would nevertheless be a great deterrent to the word acquiring a secondary meaning as referring only to the plaintiff.

Two of those companies had long antedated the plaintiff in its use.

Numerous witnesses testified either in open court or by deposition, for either the plaintiff or for the defendant, as to whether the word "Standard" has become synonymous with the plaintiff's name and whether the similarity would cause confusion. This testimony is about equally cogent on both sides. Furthermore, the plaintiff proved a number of instances of actual confusion, principally involving misdirected or misdelivered mail. In no case did the confusion involve a loss of business to the plaintiff. They were practically all errors of clerical workers who misdirected mail to the plaintiff which should have gone to the defendant, and not errors of insurance men who were confused as to which company they were dealing with. Considering the large amount of mail received by both companies and the numerous transactions in which they participated, I do not find these instances of confusion impressive. Many such would occur even if the names were very dissimilar.

The defendant, on the other hand, proved that the insurance commissioners in the forty-three states where it applied for licenses under its present name unanimously granted them notwithstanding the plaintiff had previously been granted a license in each of the states. There were thus uniform rulings by the forty-three insurance departments that the two names were not so similar as to result in unfair competition. In several of the states the rulings were made over the active opposition of the plaintiff. While these determinations are of course not binding on the court, they are of weight because they express the opinion of disinterested public officers whose duty it was to prevent the alleged wrong, and who, presumably, were familiar with the business.

Considering all the facts and circumstances, I have come to the conclusion that the word "Standard" has not acquired in the plaintiff's line of business the generally recognized secondary meaning which would make it the equivalent of the plaintiff's name; that the names of the two parties are not so similar as to confuse those who in the ordinary course would have occasion to distinguish between them; and that, therefore, there is no unfair competition by the defendant. Undoubtedly, the plaintiff has frequently been designated "The Standard" when there was no occasion to distinguish it from any other company with that word in its title; and undoubtedly, also, there will be

isolated instances of confusion by persons dealing with either of the parties. But I do not believe that the plaintiff is entitled to appropriate to its exclusive use so common and desirable a word as "Standard" without a much stronger showing than presented in this case.

Decree for defendant.