**SEARS, ROEBUCK & COMPANY and Allstate Insurance Company, Appellants,**

v.

**ALL STATES LIFE INSURANCE COMPANY, Appellee.**

**No. 16291.**

United States Court of Appeals Fifth Circuit.

June 10, 1957.

Rehearing Denied July 17, 1957.

Pinkney Grissom, Dave Kendall, Jr., David M. Kendall, Jr., Dallas, Tex. (Lederer, Livingston, Kahn & Adsit, Chicago, Ill., Thompson, Knight, Wright & Simmons, Dallas, Tex., of counsel), for appellants.

Paul Carrington, Frank G. Newman, Otis B. Gary, Carrington, Gowan, Johnson, Bromberg & Leeds, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment of the trial court, sitting without a jury, denying relief to appellants in an action for injunction and damages for trade mark infringement under the Lanham Act 15 U.S.C.A. § 1051 et seq. and for alleged unfair competition.

Appellant Sears, Roebuck & Co. is the owner of appellant Allstate Insurance Company. Sears has, since 1927, used the name Allstate to identify numerous of its products, all articles of merchandise, principally automobile tires, parts and accessories, sold in interstate commerce, and had a registered mark in connection with each class of such articles. Allstate Insurance Company was organized by Sears in 1931 and has since that time continuously engaged in the sale in all the states of the United States of policies of automobile and general casualty insurance. Under the laws of Texas it could not engage also in the life insurance business. It was first qualified to do business in the state of Texas in 1936. It registered service marks under the Lanham Act as to (1) the name Allstate and as to (2) a design showing an automobile held in two hands, with the legend "You're in good hands with Allstate." Each of these services marks was specified to relate to "automobile insurance (fire, theft, property damage, personal liability, etc.) in Class 102."

All States Life Insurance Company, having no connection with the appellants, was chartered by the state of Texas on July 1, 1955, to engage in a life insurance business. To the time of the filing of this suit in December 1955 it was engaged in the sale of its common stock to the public. It had not yet undertaken to sell any life policies.

The incorporation of insurance companies and the granting of their right to engage in the insurance business in Texas is a function of the State Board of Insurance Commissioners. The Board is charged with the duty, among others, to determine whether the applicant for a license has selected a name that is not "so similar to that of any other insurance company as to be likely to mislead the public." A review from this and all other administrative rulings of the Board is provided for by the Texas statute.[1] The appellants made formal

1. Article 21.44 of the Insurance Code of Texas V.A.T.S., provides as follows:
"Except where otherwise provided for under the provisions of the Insurance Code, if any insurance company or other party at interest be dissatisfied with any decision, regulation, order, rate, rule, act, or administrative ruling adopted by the Board of Insurance Commissioners, such dissatisfied company or party at interest after failing to get relief from the Board of Insurance Commissioners, may file a petition setting forth the particular objection to such decision, regulation, order, rate, rule, act, or administrative ruling, or to either or all of them, in the Dis-

protest to the Board on October 31, 1955, asserting the grounds later alleged in this suit, and requested the Board 'to require All States Life Insurance Company to change its name and select some other name which does not infringe upon and constitute unfair competition with Allstate Insurance Company * * *.''

The Board denied this relief by order dated November 8, 1955, reciting that the action was taken at an official meeting of the Board.[2] No appeal was taken to the District Court of Travis County or to any other court from this ruling of the Board.

In 1928, a life insurance company was organized in Alabama under the name All States Life Insurance Company. By 1931, the year the appellant Allstate Insurance Company was organized, it was doing business in four states, and by 1946 in thirteen states and the District of Columbia. It was licensed to do business in Texas during part of 1937 and 1938. In July 1955 appellee first commenced negotiations with this company for its purchase, and later, after commencement of this suit, the All States Life Insurance Company transferred all right and interest in and to its name and mark in Texas to appellee, and its principal stockholder also contracted to sell a majority of the stock of the company to appellee, which also bound itself to buy all the remaining shares of the stock.

Appellants urged on the court below and vigorously insist here that their registered trade marks and service marks under the Lanham Act[3] protect them against the use by appellee of the name All States Life Insurance Company and that independently of that statute the use of the name of appellee amounts to unfair competition at common law, diversity of citizenship giving jurisdiction to the Federal courts to enjoin the use and to award damages for past injuries.

The trial court made brief findings of fact and conclusions of law.[4]

trict Court of Travis County, Texas, and not elsewhere, against the Board of Insurance Commissioners as defendant. Said action shall have precedence over all other causes on the docket of a different nature * * *.''

2. After reciting the contentions of the parties the order concluded: "Now, therefore, premises considered, the Board finds that it is without jurisdiction to grant the relief requested by complainant and complainant's request is hereby denied."

3. 15 U.S.C.A. c. 22.

4. In view of their brevity we think it appropriate to quote them in full:
"The Court: This case was filed on December 6, 1955, and summons was returned executed on December 7. From that time on, various pleadings were filed by both the defendant and the plaintiff consisting of answers and amendments, interrogatories, and the Rules of Procedure is pretty much covered and exhausted by these various pleadings. On May 14, the Defendant's Amended Motion to Dismiss was filed, and on May 21, that motion was acted on by the Court and overruled. The grounds of that motion to dismiss was that there was no jurisdiction in this Court because the State Court, the State law, gave a forum to which the plaintiffs might go if they desired relief as to the name which had been granted to the defendant and its assignors by the Insurance Commissioner. The motion was overruled because the Court could not recognize a State Statute which would take away from the Court its federal jurisdiction for litigation growing out of a diversity of citizenship.

"The Court has been somewhat surprised by the continuous fattening of the record by the parties, especially the plaintiffs, and has done its best to keep that record down, but has not succeeded very well. Forty-two different witnesses and exhibits have been presented by the plaintiffs; exhaustive briefs have been filed by both sides consisting of original briefs and amendment briefs and all sorts of briefs which I now hand to the Clerk for inclusion with the papers in the case.

"From this exhaustive and somewhat tiresome trial and brief reading, keeping in mind the necessity of the Court's retaining that which was applicable to the issues involved, I find as facts, gentlemen, that the plaintiffs, Sears, Roebuck and Company, and the Allstate Insurance Company, are engaged, and have been engaged, in the use of the word "Allstate"

Appellants present the following four questions which they say are posed by the judgment of the trial court. They are:

"(1) Did the trial court err in holding that All States had not infringed Sears' registered trademark Allstate?

"(2) Did the trial court err in holding that All States had not infringed Allstate's registered service marked Allstate?

"(3) Did the trial court err in holding that All States had not unfairly competed with Sears and Allstate in the use of its name?

"(4) Did the trial court err in excluding from the evidence the impartial survey made to determine what, if anything, the public associated with Allstate?"

For convenience these questions will be answered in the order in which they are stated. Although appellants do not clearly distinguish at all times in their brief between alleged infringement of the registered marks and the alleged commission by appellee of acts of unfair competition, they do present these issues separately in their questions, and we shall endeavor to treat them separately. In doing so we shall put aside for the moment two arguments put forward by appellee, but shall indicate the proper disposition of them later. These two arguments are: (1) The action seeks to require appellee insurance company to change its name, and this being a matter confided by the state of Texas to the Board of Insurance Commissioners its unappealed action adverse to the plea of appellants cannot be re-litigated here; (2) the Lanham Act has no efficacy as to the regulation of an insurance company in a state whose statutes undertake such regulation (and the approval of a name is an act of regulation) because of the limiting terms of the McCarran Act.[5]

■ The first question is: Did the trial court err in holding that All States had not infringed Sears' registered trade mark Allstate?

We conclude that this question must be answered in the negative. Strictly as a matter of infringement of the many registered trade marks of Allstate owned by Sears, it is clear that as to the proposed life insurance policies in connection with which appellee intended to use the name All States Life Insurance Company there was no similarity of products. Furthermore, there was no competition between Sears and appellee. Nor was there any real similarity between the registered marks of Sears, taken as a whole, and the name of

upon insurance which was neither fire nor life insurance, but was accident and casualty insurance; that the name "All-state" has been used by the Sears, Roebuck and Company upon a multiplicity of merchandise which it sells in its various stores through the northern and central and southern portions of the United States, such as automobile tires, and automobile accessories, and that the business in which it is engaged, or in which both plaintiffs are engaged, is in no sense the business in which the defendant is engaged; the defendant All States Insurance Company is named under the permission of the State Insurance Commissioner, who, under the State law, has that right; that the name "All States" was presented; the plaintiffs objected; the Commissioner overruled that objection, supported by the Attorney General of the State of Texas, and "All States" was granted as the name for the defendant company; that it is engaged only in the life insurance business, and is not engaged in any way in the sale of merchandise.

"I further find as a fact that there is no confusion nor reason for confusion, between what the defendant is engaged in, and what the plaintiffs are engaged in.

"As a conclusion of law, gentlemen, I can see no equity whatever in favor of the plaintiffs. It would be most inequitable, and the chancellor would have both eyes and ears and heart closed if it would find that any relief in this case is entitled to the plaintiffs."

5. "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C.A. § 1012(b).

appellee.[6] In the ordinary sense of the terms the name All States Life Insurance Company is not a "reproduction, counterfeit, copy, or colorable imitation" [7] of the single word "Allstate" or the word "Allstate" imprinted on an outline map of the United States.[8] Is it such a colorable imitation in the peculiar sense in which it is used? No new definition of colorable imitation is contained in the Lanham Act. It simply prohibits the use in commerce of a colorable imitation "in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services."

Even if we are to assume that it is not necessary under this law either to prove that the sale of life insurance policies proposed by appellee is a use or sale in commerce (defined by the statute as interstate commerce) [9] or to demonstrate, without reference to likelihood of confusion, that the accused mark or name is in fact a counterfeit, copy or colorable imitation, neither of which do we decide, there is still the requirement that the accused name be one the use of which is "likely to cause confusion or mistake."

■ The fact that the litigants here are not in competition is not the decisive factor as to the likelihood of confusion. Nor is the complete dissimilarity of the articles in whose sale mark is used—automobile tires, batteries, and accessories and the like on the one hand, and life insurance policies on the other. Neither is the different type of relationship that results from the sale of an article of merchandise of small value on the one side and the sale of a policy of life insurance on the other—a difference somewhat like a difference between two classes of purchasers. But it is clear that all of these circumstances are relevant to the determination of whether there is any real "likelihood" of confusion or mistake. Philco Corporation v. F. & B. Mfg. Co., 7 Cir., 170 F.2d 958, certiorari denied 336 U.S. 945, 69 S.Ct. 813, 93 L.Ed. 1102; Brown & Bigelow v. B. B. Pen Co., 8 Cir., 191 F.2d 939. For a case in which this Court found that the allegedly infringing mark was "but a colorable imitation of the head and shoulders of the plaintiff's picture of Johnnie Walker," and which, though the imitation was used on a different article of merchandise (cigars instead of Scotch whiskey) it was held to be a question of fact whether or not there was likelihood of confusion as to the source or origin, see John Walker & Sons v. Tampa Cigar Co., 5 Cir., 197 F.2d 72, 73; after the trial court had then determined that there was indeed likelihood of confusion, we affirmed, 5 Cir., 222 F.2d 460. For another case in which this Court held that the mere fact that the second use was in connection with a different article (wine, as contrasted with jams and jellies) does not as a matter of law excuse the infringement when the mark (Bama) is actually copied, see Chappell v. Goltsman, 5 Cir., 186 F.2d 215, and see the same case at 5 Cir., 197 F.2d 837, in which after trial and a finding of fact by the trial court that there was no likelihood of confusion, largely because of the difference in articles, we affirmed notwithstanding the identity of the names of the two products. Moreover, it may be appropriate to call attention to the restrictive effect given to the certificates of registration of the several marks of the appellant Sears because of the language of the statute itself. Section 1057(b) provides:

"§ 1057. Certificates of registration—Issuance and form. * * *

---

6. The registered marks outstanding and valid at the time appear to have been the single word Allstate in block letters.

7. 15 U.S.C.A. § 1114(1) (a) (The Lanham Act).

8. Although expired marks show the word

superimposed on such an outline, these marks appear not to be in use at the time of trial.

9. On this point, however, see Pure Foods v. Minute Maid Corp., 5 Cir., 214 F.2d 792.

"(b) A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce *in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.*" (Emphasis added.) 15 U.S.C.A. § 1057(b).

Considering here only the narrow question whether there was infringement of Sears' trade marks, we do not come to the question whether there were other elements of unfair competition. As to the question of infringement, the statute itself seems to distinguish between cases in which the alleged infringer uses the mark with a different product and those in which he uses it on a competing article, for the marks as such do not carry the statutory presumptions of registrant's exclusive right to use except *as to the goods actually specified* in each certificate of registration. None of these, included insurance. They all related to articles of merchandise.

■■■■■ We conclude that in the case of noncompeting products it remains a question of fact whether there is a *likelihood* of confusion, even where there is an identity or a colorable imitation of names. It should be noted that the Lanham Act provision quoted above requires that confusion, mistake, or deception be "likely," not merely "possible." Here the trial court found as a fact, after hearing oral testimony and on consideration of the conditions prevailing in the insurance industry (including, no doubt, the fact that Sears had made no contention in 1937 or 1938, at which time it had already registered its Allstate mark and was doing business in Texas, that the entry of the All States Life Insurance Company of Alabama on the Texas scene was likely to cause confusion, and the fact that Sears had made no objection to the later entry in twelve other states in which it

was using the mark Allstate of the All States Life Insurance Company) that "there is no confusion nor reason for confusion between what the defendant is engaged in and what the plaintiffs are engaged in." Consistent with our views expressed in the above cited cases and in accord with one of the best established principles of appellate procedure, we may not reverse findings of fact by the trial court unless clearly erroneous. This finding was supported by substantial evidence and is not clearly erroneous.

The second question is: Did the trial court err in holding that All States Life Insurance Company had not infringed Allstate's service mark Allstate?

The parties have not discussed in their briefs the circumstance that the service marks registered by Allstate were dated February 21, 1956, several months after the incorporation of appellee. It does appear that the applications for them were filed in March 1952. No cross-claim is filed here seeking a cancellation of the marks, so we treat them as having all the vigor that such registration infuses into them. See section 1057(b), supra.

Again it is noted that Allstate makes no effort to point out how any of the presumptions of the statute inure to its benefit as to the underwriting of life insurance, since both service marks specify that they relate to the underwriting of automobile insurance only. It would seem from the terms of the Act itself that none of the presumptions as to the validity of the mark, e. g., that it is not geographical in nature or that it has not been too long in general use to be the subject of protection as the property of appellant, arise in a contest with a user of the same name in connection with different service. Assuming, however, that this is too narrow a construction of the Lanham Act, we think that appellant Allstate's contention here is subject to the same weakness as is that of its owner, Sears, as to the likelihood of confusion.

We first give consideration to the action of the Board of Insurance Commissioners of Texas. Assuming that appellants are correct in their contention that no finality or conclusiveness attaches to the Board's action in approving the name, it must be conceded that in the case of an official state administrative body whose duty it is to regulate an industry the findings and decisions of such a body in the field of its responsibilities is persuasive and certainly relevant in the determination of the same fact by a trial court. Moreover, it cannot be seriously contended that the insurance board did not have the duty to pass on this precise matter. The statute specifically stated that the name of an applicant insurance company must not be one "likely to mislead the public."[10]

After some objection had been made to two other names, and some also as to the one finally approved, the Board certified appellee with the explanation that the difference in lines of insurance of Allstate and All States Life would distinguish the companies. Appellee sought to bolster this decision of the Board by tendering in evidence a list of insurance companies that had been certified to do business in the state of Texas. On objection to the relevancy and materiality of this evidence it was ruled out by the court. No objection was made as to its authenticity or form. It was brought up by stipulation. We think it was both material and relevant. Since it supports the finding of fact by the trial court and the effect of holding that it should be admitted would be merely to add weight to what the trial court did, we shall consider it as in evidence. Moreover, appellants in their brief refer to it as though it were in evidence. Its relevance lies in the fact that it clearly discloses that in the insurance business in Texas a great similarity in the names of different companies is not considered a cause of confusion so long as the companies are not competing in the same line of insurance or so long

as the names indicate different lines from those already certified. Thus, for instance, there are in Texas twelve insurance companies operating under a name of which the dominant and initial word is "American." There are eleven companies selling insurance whose principal title word is "State" or "States"; three wholly unconnected companies with the name "Atlas"; four called "Northwestern"; four "Phoenix"; nine "Southwest" or "Southwestern"; and six "Standard." The list shows seventy groups of insurance companies in which each group contains two or more companies with names identical or at least as similar as Allstate and All States.

Th language of the district court in Standard Accident Insurance Co. v. Standard Surety & Casualty Co., D.C. S.D.N.Y., 53 F.2d 119, is pertinent to the inquiry as to the propriety of the use of similar names of insurance companies even when they are in direct competition. The court said:

"The defendant * * * proved that the insurance commissioners in the forty-three states where it applied for licenses under its present name unanimously granted them notwithstanding the plaintiff had previously been granted a license in each of the states. There were thus uniform rulings by the forty-three insurance departments that the two names were not so similar as to result in unfair competition. In several of the states the rulings were made over the active opposition of the plaintiff. While these determinations are of course not binding on the court they are of weight because they express the opinion of disinterested public officers whose duty it was to prevent the alleged wrong, and who, presumably, were familiar with the business." 53 F.2d at page 121.

Undoubtedly the Texas Insurance Commission was justified in considering the apparently universal practice in the in-

---

10. V.A.T.S. Insurance Code, Art. 2.02.

surance industry of distinguishing between companies by differentiating between the lines of insurance carried. That a determination by such an administrative tribunal is of great relevance and should be given great weight in a regulated industry, see also Central Mutual Auto Ins. Co. v. Central Mutual Insurance Co., 275 Mich. 554, 267 N.W. 733.

In addition to the weight to be given to the determination by the Board there was affirmative evidence to support the trial court's finding that there was no likelihood of confusion as to the source of the insurance policies to be sold by appellee. It was undisputed that appellant Allstate took no action to prevent confusion when All States Life Insurance Company of Alabama entered thirteen states in which Allstate was already selling its lines of insurance. When asked on cross-examination as to whether he received a sufficient number of misdirected letters to cause him to protest or to complain to the Alabama corporation, the Director of Allstate Insurance Company, who was called by appellant to testify as to its business answered: *"There was nothing we could protest to them; it was not their fault; we merely forwarded them on."* (Emphasis added.) He further stated that his company had never protested the licensing of the Alabama corporation in the various states where it had been licensed.

The President of the Alabama corporation testified that during all the years when it and Allstate had both operated in several states concurrently there had been only one occasion of confusion with which he was familiar. In that instance a court summons directed to appellant Allstate had been erroneously served on his company.

■ Appellants produced a number of witnesses whose testimony was to the effect that when they heard of the sale of All States Life Insurance Company stock they associated this activity in their minds with appellants. In each instance, however, they did no more than inquire as to whether there was any real connection. There was some testimony that stock salesmen of the underwriter selling the stock had at least impliedly represented that the appellee was connected with appellant. This was the act of the individual representative of an independent contractor and not anything inherent in the name itself. The court apparently found that such sporadic acts were not chargeable to the appellee. The possibility of confusion certainly existed, but we believe it permissible for the trial court to have rejected the contention that confusion was likely. Moreover, no proof was offered to indicate that any single transaction testified to resulted in any ultimate loss or danger of loss to appellants. We think it clear, as we did in Chappell v. Goltsman, supra, that the similarity of the names even with the inclusion in appellee's name of the word "Life," together with the evidence introduced on the trial, would have been sufficient to authorize a finding by the trial court of the possibility and perhaps even of the likelihood of confusion. This is quite different, however, from our being justified in reversing the findings of the trial court made on ample evidence, including the actions of the State Insurance Board, as clearly erroneous. We conclude that no error was committed by the trial court in finding that there was no infringement of appellant Allstate's service marks.

■ The third question is: Did the trial court err in holding that All States Life Insurance Company had not unfairly competed with Sears and Allstate in the use of its name. In answering this question we need not answer the threshold question as to whether the Lanham Act itself created a new federal right of action for unfair competition unless we conclude that such a federal right would differ from the Texas common-law action for unfair competition, and that if both causes of action exist this still remains an area in which the state law would be applied under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. We pretermit these interesting and complicated

questions [11] because we conclude that there was sufficient evidence on which the trial court could find as it did that there was no confusion or reason for confusion between the activities of the two insurance companies which would satisfy the concept of unfair competition asserted by appellants. *A fortiori*, we do not need to consider whether appellants made out a case of fraudulent action by defendants, which appellee contends is required to establish unfair competition in Texas.

■■■ In spite of the frequent confusion in the treatment of trade or service mark infringement cases and those involving unfair competition all parties to this litigation recognize that in addition to the right to protection against the infringement of their trade or service marks appellants also have the right to protect themselves from acts of the defendant by which the latter would "unfairly" appropriate to itself any of the good will that belongs as a species of property to the appellants in the state of Texas. Whether an accused party is so appropriating or attempting to appropriate, with likelihood of success, such valuable property of the complainant is, of course, a question of fact. Chappell v. Goltsman, supra; John Walker & Sons v. Tampa Cigar Co., supra. The finding by the trial court "that there is no confusion, no reason for confusion, between what the defendant is engaged in, and what the plaintiffs are engaged in" undercuts completely any contention that there exists any unfair competition if such finding is adequately supported in the record, for if there can be no confusion under the facts of this case then, of course, there can be no trading by appellee on appellants' good will. We think the facts heretofore outlined in considering the previous questions demonstrate that the trial court's findings are so adequately supported as to make it impossible for us to hold that its decision was clearly erroneous.

We next come to the fourth question: Did the trial court err in excluding the document tendered as an impartial survey made to determine what if anything the public associated with Allstate. Tendered in support of its contention that the use of appellee's name was likely to confuse the public as to the source of insurance policies to be issued by it, the survey was excluded by the trial court on its own motion on the ground that it was hearsay. Its author testified that he had caused ten interviewers to telephone 100 impartially selected telephone subscribers each and ask them a series of questions. The questions were:

"(1) What comes to your mind when I say the brand name 'Westinghouse'?

"(2) What does the brand 'Kodak' mean to you?

"(3) What does 'Allstate' mean to you?

"(4) If you wanted Allstate insurance, where would you go?

"(5) Have you ever heard of All States Life Insurance Company?

"(6) Who would you say owns All States Life Insurance Company?"

■■■ Of course, this survey if otherwise admissible was not excludable as hearsay merely because the 1000 interviewed persons were not themselves testifying, since it was not intended to prove the truth of the statements made by them. However, it was inadmissible as hearsay because it was offered to prove what ten interviewers say they were told by the persons questioned. Appellants do not take exception here to the refusal of the trial court to let them put "several" of the interviewers on the stand to explain how they conducted the survey. They complain only of the action of the court in ruling the survey inadmissible. A casual glance at the survey itself shows it to contain self-serving statements in the summaries which it

---

11. Discussed at some length in Comment: "Erie Limited: The Confines of State Law in the Federal Courts," 40 Cornell L.Q. 561, 571–74, and in the cases and writings there cited.

includes. Furthermore, although this was not the ground on which the court rejected it, it appears that it would be inadmissible on the ground of irrelevance, as not fairly presenting the name All States Life Insurance Company until after two questions had been asked which if correctly and properly answered called to mind Sears, Roebuck & Company. We think it not truly illustrative of what the public thinks to permit one party to propound questions chosen on its behalf, however fairly attempted, with no opportunity given to the other party to test the answers given by the persons interviewed. Most of the witnesses produced by appellants at the trial itself to give their impressions as to likelihood of confusion were cross-examined by appellee; this resulted in bringing before the court a much clearer picture of what their reactions really were. We think it was not error for the trial court to rule out this survey.

■ It will now become apparent that we conclude that the judgment of the trial court must be affirmed without the necessity of passing on the two points raised by appellees as to the binding effect of the Board's action and as to the limiting effect on the Lanham Act of the McCarran Act. However, we think it appropriate to state our views as to these matters. We do not think the entire cause of action alleged by appellants, derived primarily from federal statutes, can be controlled by the determination of the Board of Insurance Commissioners, as is suggested by appellees. We also conclude that there is nothing in the McCarran Act that limits the right of the owner of a trade or service name to seek redress in the federal courts merely because the approval of the name of the infringing insurance company is part of the duties of the state board. The real purpose of the McCarran Act is too well known to permit us to extend its prohibitions to this situation:

> "Respondents, on the other hand, seek to derive support for reliance on the Louisiana statute from the

McCarran Act * * *. Suffice it to say that even the most cursory reading of the legislative history of this enactment makes it clear that its exclusive purpose was to counteract any adverse effect that this Court's decision in United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, might be found to have on State regulation of insurance." Maryland Casualty Co. v. Cushing, 347 U.S. 409, 412–413, 74 S.Ct. 608, 610, 98 L.Ed. 806.

■ No matter what approach is taken to the questions presented for decision here, it is undisputed that infringement and unfair competition are matters of fact. They cannot be found to exist merely from the similarity in names, especially where the names are used in relation to different products. The record contains sufficient evidence of probative value to sustain the trial court's finding that no infringement or unfair competition was proved.

Of course the judgment of the trial court does not foreclose any future action if, in fact, the appellee should so conduct its life insurance business as to mislead its prospective customers into the belief that All States Life Insurance Company is backed by or is connected with Sears, Roebuck & Company. All that has been held thus far is that no such conduct had occurred to the date of the trial below.

The judgment is affirmed.

JONES, Circuit Judge (dissenting).

It seems to me that the findings of the district court come near to negativing its conclusion that there is no confusion or reason for confusion between what the defendant is engaged in and what the plaintiffs are engaged in. To stress the slight difference in the names of the two insurance companies is to beg the question. To consider the similarity of names of other insurance companies is to invoke immaterial comparisons. I agree that whether an accused party is appropriating or attempting to appro-

priate the good will and the good name of another is a question of fact. The excluded evidence of the results of the survey should, I think, have been admitted as bearing upon that issue. The reasons given by the majority for rejecting the evidence should, in my opinion, go to its weight and not to its admissibility. I respectfully dissent.

Rehearing denied; JONES, Circuit Judge, dissenting.