**UNITED STATES of America**

**v.**

**Philip H. MEADE, E. Bernie Shelton, W. Harold Hilbert.**

**No. IP 59–Cr–21.**

United States District Court
S. D. Indiana,
Indianapolis Division.

Jan. 2, 1960.

Don A. Tabbert, U. S. Dist. Atty., John C. Vandivier, Jr., Asst. U. S. Dist. Atty., Indianapolis, Ind., for the United States.

Luis Kutner, Chicago, Ill., Joseph M. Shannon, Indianapolis, Ind., for defendants.

HOLDER, District Judge.

The Farm and Home Agency, Inc. is an Indiana corporation organized under The Indiana General Corporation Act.[1]

The purposes for which the Agency Corporation was formed are as follows:

"In furtherance and not in limitation of the powers conferred by law:

"(a) To continue as a corporation, under the corporate name, perpetually;

"(b) To sue and be sued in its corporate name;

"(c) To have a corporate seal and to alter the same at pleasure, and to use such seal generally, but the use of such seal shall be necessary only as required by law;

"(d) To acquire, own, hold, use, lease, mortgage, pledge, sell, convey or otherwise dispose of property, real and/or personal, tangible and/or intangible, legal or equitable;

"(e) To borrow money, and to issue, sell or pledge its property and franchises to secure the payment thereof;

"(f) To conduct business in this state and elsewhere; to have one or more offices out of this state; and to acquire, own, hold and use, and to lease, mortgage, pledge, sell, convey or otherwise dispose of property, real and/or personal, tangible and/or intangible, out of this state;

"(g) To acquire, guarantee, hold, own and vote and to sell, assign, transfer, mortgage, pledge or otherwise dispose of the capital stock, bonds, securities or evidence of indebtedness of any other corporation, domestic or foreign;

"(h) To purchase, own and/or hold and to sell and transfer (but not to vote) shares of its own capital stock if and when the capital of this corporation is not thereby impaired;

"(i) To appoint such officers and agents as the business of this corporation may require, and to define their duties and fix their compensation;

---

1. Chapter 215 of the 1929 Acts of the Indiana General Assembly, as amended. (Burns' Annotated Indiana Statutes, Volume 6, Part 1 of 1948 Replacement, Sections 25-201 through 25-265).

"(j) By its Board of Directors to make, alter, amend or repeal bylaws for the government and regulation of its affairs;

"(k) To cease doing business and to dissolve and surrender its corporate franchise;

"(l) To do all acts and things necessary, convenient or expedient to carry out the purpose for which it is formed;

"(m) To conduct and operate a general insurance agency business in all lines of insurance except life insurance and to represent as agent or broker insurance companies organized or admitted to do business in Indiana but in such representation or agency this corporation may engage in all lines of insurance other than life insurance; to serve as general agent, manager, or in other representative capacities insurance companies organized or admitted to do an insurance business in this state and to appoint subagents, brokers or salesmen for such companies under the terms of any contract with such insurance companies, this corporation's activities in such regard being limited, however, to all lines of insurance other than life insurance; to promote the affairs of insurance companies and to advise and counsel with respect to insurance underwriting and to consult with or serve as broker for assureds in dealing with insurance companies and insurance problems, this corporation's activities in such regards to be limited, however, to all lines of insurance other than life insurance; to act as insurance agent, broker or solicitor in the sale or negotiation of all forms of insurance other than life insurance; and to deal with and engage in all of the activities enumerated in these purposes as owner, proprietor, manager or agent for others on any legitimate contractual basis.

"(n) To buy, sell, own, lease, trade, exchange, repair, mortgage and deal with real estate, including the construction and remodeling of houses, apartments and buildings generally; to finance and refinance the purchase and sale of real estate; to purchase, sell and deal with real estate contracts, leases and other contracts involving real estate or personal property; to invest in notes, bonds, or investments generally, and to negotiate loans and mortgages for itself or for others on real estate or personal property and to engage in the purchase and sale of securities on its own behalf or as agent, broker or solicitor for others.

"The foregoing shall not be in limitation of any powers, privileges or rights conferred upon this corporation by law."

The Agency Corporation is the operator of a health and accident insurance agency in Indiana and as an investor it owns all the issued and outstanding capital stock of the Farm and Home Insurance Company, an Indiana corporation, except the qualifying shares owned by the 11 Directors of the Insurance Corporation. Shortly after incorporating, it placed its insurance business with the LaSalle Casualty Company of Chicago, Illinois. On December 17, 1954, the Farm and Home Insurance Company (hereinafter called Insurance Corporation) was formed under The Indiana Insurance Law of 1935,[2] by some of those persons interested in the Farm and Home Agency, Inc. (hereinafter called Agency Corporation) and since that time most of its business has been placed in the Insurance Corporation. The Insurance Corporation then entered the life insurance and health and accident insurance business as a Class 1(b) company.

2. Chapter 162 of the 1935 Acts of the Indiana General Assembly, as amended. (Burns' Annotated Indiana Statutes, Vol. 8, Part 1 of 1952 Replacement, Sections 39-3201 through 39-5032.)

On July 1, 1955, the Agency Corporation filed its Articles of Amendment of the Articles of Incorporation pursuant to the provisions of The Indiana General Corporation Act to enable it to increase its total authorized capital to the extent of 100,000 shares at $1.00 par per share so that the Agency Corporation would have a total authorized capital of 500,000 shares of common stock having a par value of $1.00 per share, meaning that its total authorized capital in dollars became $500,000.00.

On July 1, 1955 and on July 19, 1955, the Agency Corporation filed with the Indiana Securities Commission pursuant to The Indiana Securities Law,[3] its Application and Amended Application for Registration of Securities concerning such additional 100,000 shares of capital common stock at which time it owned 89% of the capital stock of the Insurance Corporation. The application recited that the corporation itself was the issuer and would be the dealer, and that it would sell the stock through licensed agents but the Agency Corporation itself would not retain any profit out of the sale of such stock; that no application for registration of such stock issue had been filed with the Securities and Exchange Commission of the United States; that of the net proceeds of this sale of stock the Agency Corporation would pay to the Insurance Corporation a part thereof for increased capital stock, a part thereof to meet the Insurance Corporation's required additional reserve on policy liability, and the balance thereof as contributed surplus of the Insurance Corporation to pay costs of adding new agents and creating agency forces in other states. On July 19, 1955, The Indiana Securities Commission approved such issue of stock to be offered within the State of Indiana in accordance with the provisions of The Indiana Securities Law.

The Securities and Exchange Commission of the United States, pursuant to Section 20 of the Securities Act of 1933, as amended, (15 U.S.C.A. § 77t) instituted an injunction action in the United States District Court for the Southern District of Indiana to enjoin the defendants in the instant case and others from transactions involving the Agency Corporation stock sales in violation of the Securities Act of 1933. The defendants then consented to a decree in such action. Subsequently, the defendants sought to set aside the consent judgment and for other relief on the grounds that the Securities Act of 1933 was not applicable to the facts which they contended amounted to the regulating of the business of insurance and persons engaged therein by the Securities and Exchange Commission forbidden by The McCarran-Ferguson Insurance Regulation Act of 1945, as amended (15 U.S.C.A. §§ 1011, 1012).[4]

The defendants were indicted on March 13, 1959. Count One of the Indictment charged them with violating 18 U.S.C.A. § 371 by unlawfully, willfully, knowingly, and feloniously conspiring, combining, confederating and agreeing to commit certain offenses against The Securities Act of 1933, as amended, to wit: Section 5(a) (1), Section 5(a) (2), and Section 5(c). (15 U.S.C.A. § 77e(a) (1), § 77e(a) (2), and § 77e(c)). As part of such conspiracy, the defendants agreed to do the following:

The defendants would issue and cause to be issued shares of capital common stock of Farm and Home Agency, Inc., an Indiana corporation, in the names of the defendant, Fred W. Nation, and K. Ward Wallace as nominees and dummies for the purpose of concealing the identities of the true purchasers of such securities and for the purpose of creating the appearance of a sale of

---

3. Chapter 120 of the 1937 Acts of the Indiana General Assembly, as amended. (Burns' Annotated Indiana Statutes, Vol. 6, Part 1 of 1948 Replacement, Sections 25-829 through 25-853.)

4. Securities and Exchange Commission v. Farm & Home Agency, Inc., 7 Cir., 270 F.2d 891; certiorari to United States Supreme Court pending.

such securities to residents of the State of Indiana, and to further conceal the non-applicability of the exemption from the provisions of the aforesaid Section 77e of Title 15 of the United States Code, namely, Section 77c(11) of Title 15 of the United States Code, which exempts any security which is part of an issue offered and sold only to persons resident within a single state or territory, where the issuer of such security is a person resident and doing business within, or a corporation incorporated by and doing business within such state or territory; the defendants would issue said securities and cause them to be issued in the names of said Wallace and Nation as nominees and dummies for retransfer to other persons who would purchase such shares and who would not be residents of the State of Indiana; the defendants would offer for sale, sell and deliver after sale said securities to the purchasers thereof which said purchasers would not be residents of the State of Indiana; the defendants would issue and cause to be issued checks for sums of money payable to the defendant, Fred W. Nation, and K. Ward Wallace as nominees and dummies, said checks purporting to be in payment to them for capital common stock of Farm and Home Agency, Inc., for the purpose of creating the appearance of sales by them of such securities, and for the purpose of concealing that such securities would be issued to defendant, Fred W. Nation, and to K. Ward Wallace as nominees and dummies for retransfer to the true non-resident purchasers thereof; the funds represented by such checks, as the defendants well knew, would be intended to be paid to the Farm and Home Agency, Inc.; the said Fred W. Nation and K. Ward Wallace, acting as nominees and dummies, would endorse such checks and the defendants cause them to be so endorsed

and such checks and the proceeds of such checks, as the defendants well knew, would be paid to and for the account of Farm and Home Agency, Inc., and to and for the accounts of defendants other than said nominees and dummies; the defendants would issue and cause to be issued certificates of capital common stock of Farm and Home Agency, Inc., in the names of the true purchasers of such stock who would not be residents of the State of Indiana, and such issuances would be effected by transfer on the records of Farm and Home Agency, Inc., of stock certificates which would be issued in the names of said Fred W. Nation and K. Ward Wallace as nominees and dummies; the defendants would receive and cause to be received, would obtain and cause to be obtained money, funds, commissions, credits in account with Farm and Home Agency, Inc., and capital for Farm and Home Agency, Inc., out of monies in payment for capital common stock of Farm and Home Agency, Inc., to be paid by the true purchasers thereof, which true purchasers, as the defendants well knew, would include persons who would not be and were not residents of the State of Indiana; the defendants, in addition to the aforesaid offers and sales of stock for the capital account of Farm and Home Agency, Inc. through the use of said Fred W. Nation and K. Ward Wallace as nominees and dummies and otherwise, and concurrently therewith and continuing thereafter would offer for sale, sell and deliver after sale and cause to be so offered, sold and delivered shares of capital common stock of Farm and Home Agency, Inc. to purchasers thereof, which said purchasers, as the defendants well knew, included persons who would not be residents of the State of Indiana, and which said stock would be issued to, owned by and sold for the account of the defendant Philip H. Meade; the de-

fendants would issue and cause to be issued checks payable to the defendant Philip H. Meade for sums of money in payment to him for such stock; the defendants would issue and cause to be issued certificates of capital common stock of Farm and Home Agency, Inc. in the names of purchasers of such stock and such issuances would be, as the defendants well knew, effected by transfer on the records of Farm and Home Agency, Inc., of stock certificates which would be issued to the defendant Philip H. Meade; the defendants would receive and cause to be received, obtain and cause to be obtained money, funds, commissions, credits to commission accounts, and profits and proceeds of sale out of monies in payment for such capital common stock of Farm and Home Agency, Inc. owned by defendant Philip H. Meade to be paid by the purchasers thereof; the defendants, in the aforesaid manner and pursuant to the said conspiracy, would unlawfully, willfully and knowingly offer to sell and sell in excess of 162,-317 shares of the capital common stock of Farm and Home Agency, Inc. for a consideration in excess of $785,055.50; and Overt Acts were alleged.

Counts Two through Seven of the Indictment separately charge two or more of the defendants with violating 15 U.S.C.A. § 77e(a) (2) on September 28, 1955, April 27, 1956, May 14, 1956, May 24, 1956, June 14, 1956, and May 1, 1957, by willfully and unlawfully carrying and causing to be carried in interstate commerce, by means and instruments of transportation, a security, namely capital common stock of the Agency Corporation for the purpose of six (6) separate sales and deliveries after sales to residents of the States of Ohio and Illinois when such stock was not then and there registered with the Securities and Exchange Commission.

This case was tried by a jury and a verdict of guilty was returned as to each of the defendants for the respective applicable Counts.

Through motions to dismiss the Indictment, objections to evidence during trial, motions for acquittal, motion in arrest of judgment, and motion for new trial, the defendants presented the question as to whether or not the defendants were subject to The Securities Act of 1933, as amended. The defendants contend that their alleged acts in the Indictment and in the evidence were as charged in the indictment within the meaning of engaging in the business of insurance of the McCarran-Ferguson Insurance Regulation Act of 1945, as amended, (15 U.S. C.A. §§ 1011, 1012) (hereinafter referred to as the McCarran Act); and the Securities Act of 1933, as amended, is inapplicable and that there is no criminal offense against the United States. Other questions of law have been raised by the defendants which are not covered in this opinion.

The McCarran Act was the outgrowth of the case of United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440. In keeping with the history of the McCarran Act, the State of Indiana in addition to other laws concerning insurance or the business of insurance in 1947 enacted an Unfair Competition and Practice Law declaring as its purpose to regulate the trade practices in the business of insurance, in accordance with the intent of Congress as expressed in the McCarran Act, by defining, or providing for the determination of, all such practices which constitute in this state unfair methods of competition and unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.[5]

5. Chapter 112 of the 1947 Acts of the Indiana General Assembly, as amended. (Burns' Annotated Indiana Statutes, Vol. 8, Part 1 of 1952 Replacement, Sections 39–5301 through 39–5318.)

The Indiana Insurance Law of 1935 created a Department of Insurance,[2] providing for the formation of insurance corporations, subject to the approval of the Department, Attorney General, and Secretary of State; the issuance of a permit by the Department thereafter to the corporation to complete its organization; for the issuance of a certificate and license to engage in the insurance business in Indiana; and subjecting the insurance corporation to the regulation of the Department. The financing of the insurance corporation through the issuance of capital stock was not only subject to the provisions of the Indiana Insurance Law of 1935 but also The Indiana Securities Law of 1937.[2] The Indiana Insurance Law of 1935 made no provision for the incorporation of the Agency Corporation and its financing through capital stock issues and of necessity the Agency Corporation was organized under The Indiana General Corporation Act of 1929 and regulated by the Secretary of the State of Indiana and the issuance of capital stock by The Indiana Securities Law. Section Two of The Indiana General Corporation Act of 1929 expressly provides that corporations may not be organized under it who have insurance as their business purpose or purposes.

The Indiana Insurance Law of 1935 provided for the licensing of agents, including the Agency Corporation authorized by its charter or by law to do an insurance agency business and authorized in writing by an insurance company to transact business as its representative. The licensing provisions of the insurance law do not regulate the financing of the Agency Corporation through issuance of capital stock.

 The McCarran Act of 1945 does not remove the general application of United States criminal jurisdiction in all actions or conduct of persons engaged in the business of insurance. In United States v. Sylvanus, 7 Cir., 1951, 192 F.2d 96, 100, it was held:

"It was not the intent of the Congress, by its passage of the McCarran Act, to surrender control of the use of the mails or to cease to authorize the federal courts to determine whether the mails have been utilized in attempted execution of a scheme to defraud."

In Maryland Casualty Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 610, 98 L.Ed. 806, Mr. Justice Frankfurter said:

"Suffice it to say that even the most cursory reading of the legislative history of this enactment makes it clear that its exclusive purpose was to counteract any adverse effect that this Court's decision in United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, might be found to have on State regulation of insurance. * * *

"The question whether application of the direct action statute conflicts with federal maritime law is not touched by the South-Eastern Underwriters case. In the face of this unequivocal expression of congressional meaning, the statute cannot be read as doing something that Congress has told us it was not intended to do. The McCarran Act is not relevant here."

In Sears, Roebuck & Co. v. All States Life Insurance Co., 5 Cir., 1957, 246 F.2d 161, 172, it was held:

"However, we think it appropriate to state our views as to these matters. We do not think the entire cause of action alleged by appellants, derived primarily from federal statutes, can be controlled by the determination of the Board of Insurance Commissioner, as is suggested by appellees. We also conclude that there is nothing in the McCarran Act that limits the right of the owner of a trade or service name to seek redress in the federal courts merely because the approval of the name of the infringing insur-

2. See Note 2 on page 870.

ance company is part of the duties of the state board. The real purpose of the McCarran Act is too well known to permit us to extend its prohibitions to this situation."

All transactions of an insurance company are not excluded from the Securities Act of 1933 by the McCarran Act. A variable annuity contract was held not to be the business of insurance within the meaning of the McCarran Act and was required to be registered under the Securities Act of 1933. Securities and Exchange Commission v. Variable Annuity Life Insurance Co., 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640.

It is unnecessary for the Court to decide in this case whether the financing by the sale of stock of an Agency Corporation is engaging in the business of insurance where the sole purpose and business is the conduct and operation of a general insurance agency business and to represent as agent, or broker, or manager, or other representative capacities of insurance companies. The issue and sale of the Agency Corporation stock in issue in this case was to further other investment business purposes hereinafter explained than that business purpose of an agent, or broker, or solicitor, or representative of an insurance company for the sale of insurance contracts.

 Whether the Agency Corporation under the facts of this case was in the "business of insurance" within the meaning of the McCarran Act it is necessary to examine the business purpose of the Agency Corporation. The Articles of Incorporation of the Agency Corporation provide in part for the following business purposes:

"(n) To buy, sell, own, lease, trade, exchange, repair, mortgage and deal with real estate, including the construction and remodeling of houses, apartments and buildings generally; to finance and refinance the purchase and sale of real estate; to purchase, sell and deal with real estate contracts, leases and other contracts involving real estate or personal property; to invest in notes, bonds, or investments generally, and to negotiate loans and mortgages for itself or for others on real estate or personal property and to engage in the purchase and sale of securities on its own behalf or as agent, broker or solicitor for others.

"(f) To conduct business in this state and elsewhere; to have one or more offices out of this state; and to acquire, own, hold and use, and to lease, mortgage, pledge, sell, convey or otherwise dispose of property, real and/or personal, tangible and/or intangible, out of this state;

"(g) To acquire, guarantee, hold, own and vote and to sell, assign, transfer, mortgage, pledge or otherwise dispose of the capital stock, bonds, securities or evidence of indebtedness of any other corporation, domestic or foreign;".

the foregoing purposes are independent of the Agency Corporation's insurance agency business purposes of the Articles of Incorporation of the Agency which are provided for in part therein as follows:

"(m) To conduct and operate a general insurance agency business in all lines of insurance except life insurance and to represent as agent or broker insurance companies organized or admitted to do business in Indiana but in such representation or agency this corporation may engage in all lines of insurance other than life insurance; to serve as general agent, manager, or in other representative capacities insurance companies organized or admitted to do an insurance business in this state and to appoint subagents, brokers or salesmen for such companies under the terms of any contract with such insurance companies, this corporation's activities in such regard being limited, however, to all lines of insurance other than life insurance; to promote the affairs of insurance companies and to ad-

vise and counsel with respect to insurance underwriting and to consult with or serve as broker for assureds in dealing with insurance companies and insurance problems, this corporation's activities in such regards to be limited, however, to all lines of insurance other than life insurance; to act as insurance agent, broker or solicitor in the sale or negotiation of all forms of insurance other than life insurance; and to deal with and engage in all of the activities enumerated in these purposes as owner, proprietor, manager or agent for others on any legitimate contractual basis."

The Agency Corporation thus has several purposes. It cannot be said that the Agency Corporation being in the business of an agent, or broker, or solicitor, or representative for the sale of insurance policies issued by another corporation in the insurance business includes the business of the financing of such policy-issuing insurance corporation so as to put the Agency Corporation in the insurance business of the policy-issuing corporation within the meaning of the McCarran Act. And, it cannot be said that, the business of owning and trading of property of all kinds including capital stock of any other corporation and construction of real estate improvements and the financing thereof, includes the business purpose of the business of insurance within the meaning of the McCarran Act. And the alleged conduct of the defendants on their own or under the domination and control of the Agency Corporation, or their collective or several domination and control of the Agency Corporation in their engaging in the solicitation for, sale of, and transportation of the capital stock of the Agency Corporation cannot be said to be the business of insurance within the meaning of the McCarran Act.

It is this Court's opinion that the alleged conduct of these defendants is remote from the business of insurance as intended by the McCarran Act and The Securities Act of 1933 is applicable.

Their alleged conduct was to the end of financing the Agency Corporation which had the voluntary chosen obligation to invest the proceeds from the sale of a stock issue in another corporation which was engaging in the exclusive business of insurance. The Agency Corporation and the defendants stand in no different position than any other investor in the stock of an insurance corporation. Neither the investor in an insurance company nor his stock agent, broker, or solicitor are in the classification of engaging in the insurance business within the meaning of the McCarran Act.

All of the motions and objections were overruled and denied.