**ALLSTATE INSURANCE COMPANY**

v.

**ALLSTATE INVESTMENT COR-
PORATION.**

Civ. A. No. 8396.

United States District Court
W. D. Louisiana,
Shreveport Division.

Oct. 23, 1962.

A. G. Seale, and Louis G. Baine, Jr., Seale, Hayes, Smith, Keogh & Franklin, Baton Rouge, La., Charles J. Komaiko, Skokie, Ill., Arthur R. Carmody, Jr.,

Wilkinson, Lewis, Madison & Woods, Shreveport, La., for plaintiff.

Robert G. Pugh, and John L. Schober, Jr., Pugh & Schober, Shreveport, La., for defendant.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

Plaintiff, Allstate Insurance Company, an Illinois corporation authorized to do business in Louisiana, for many years has vigorously pursued the insurance business throughout the United States. A wholly-owned subsidiary of Sears, Roebuck and Co., its advertising expenditures for the years 1947 through 1960 were $41,331,915.65, with more than $8,000,000 expended in 1960 alone, of which $68,000 was spent in Louisiana. In an attempted furtherance of its business and in an effort to aid itself in protecting this advertising investment, plaintiff obtained a service mark, denominated *Allstate*, upon the principal register of the United States Patent Office, 15 U.S.C. § 1053, for the underwriting of *automobile insurance risks*.

Defendant, Allstate Investment Corporation was organized by Edwin Jones of Shreveport under the laws of Arkansas on July 12, 1956, and has been authorized to do business in Louisiana since that year. The reason for its incorporation in Arkansas, instead of Louisiana, was that the former State requires an initial capital of $25,000 for a mortgage banking concern, whereas Louisiana requires $100,000. Since its organization, and admission to do business in Louisiana, Allstate Investment Corporation has been actively engaged in the mortgage brokerage business in North Louisiana, principally in the vicinity of Shreveport. Throughout its life, during which it has grown and prospered in its own small way compared to plaintiff's huge growth, this corporation has featured the word *Allstate* in its advertisements, signs, and stationery.

Prior to his corporate entry into the mortgage banking field, Jones, the young but astute principal stockholder and organizer of Allstate Investment Corporation, operated a general insurance agency, called the Edwin Jones Insurance Agency. He also had operated, in a relatively small way, in mortgage brokering since he was about 20 years old, during summer vacations from college.

The insurance agency was continued after Jones actively entered the mortgage banking field and was incorporated in 1960. Allstate Investment Corporation and Edwin Jones Insurance Agency, Inc., have offices on the same floor in an attractive new building erected by the Investment Corporation, to which the Insurance Agency pays a $200 monthly rental. A single sign in front of the building advertises Allstate Investment Corporation and Edwin Jones Insurance Agency. The sign also contains in the same size letters the names of two other tenants in the building, Universal C. I. T. Credit Corp., and Northern Insurance Co. They occupy the lower floor. There is one receptionist for both the Investment Company and the Insurance Agency on the second floor, and it appears that the Insurance Agency and the Investment Corporation have a number of mutual clients. This results from the fact that the institutional investors for whom the Investment Corporation places loans require that the improvements on each tract of land upon which mortgage loans are granted be protected by a policy of fire and extended coverage insurance. For those borrowers who express no preference for a particular insurance agency or company, much of this kind of insurance is placed with the Edwin Jones Insurance Agency, Inc., which derives slightly more than fifty per cent of its coverage from such sources.

Allstate Insurance Company complains that these activities and the close proprietary and managerial connexity between Allstate Investment Corporation and the Insurance Agency has resulted in service mark infringement and unfair competition. By a letter dated December 17, 1959, Allstate Insurance Company asked Allstate Investment Corporation to cease using the word *Allstate* in its corporate name. In this letter it was point-

ed out that *Allstate* was a registered service mark and its use by the Investment Company would, in the opinion of the Insurance Company, cause confusion as to the source or origin of the services rendered by the Investment Corporation. A second letter was sent on June 30, 1961, reiterating the Insurance Company's demand that the Investment Corporation cease using the word *Allstate* and notifying defendant that it had retained counsel to press its demands. Not long thereafter, this suit was filed on behalf of Allstate Insurance Company against Allstate Investment Corporation alleging that it had infringed the service mark, *Allstate,* and had engaged in unfair competition. Consequently, the Insurance Company claims it is entitled to a temporary and permanent injunction, forcing defendant to cease using *Allstate* in its name, and to damages. Defendant denies the charges of infringement and unfair competition and that plaintiff is entitled to the relief demanded.

In assessing the protection granted a service mark, it is proper to consider the basic principles upon which the Lanham Act, 15 U.S.C. § 1051 et seq., is based. In the commentary to the Act found at page 288 of 15 U.S.C.A., it is stated:

> "The Congressional Committees recognized the two-fold purpose of any trade-mark statute when they said:
>
> " 'One (purpose) is to protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get. Secondly, where the owner of a trade-mark has spent energy, time, and money in presenting to the public his product, he is protected in his investment from its misappropriation by pirates and cheats. This is the well-established rule of law protecting both the public and the trade-mark owner.' "

■■ The practical problem of carrying out the announced principles of the Lanham Act and its precursors has not been an easy one, however, since registry of a service mark is not an absolute prohibition against use of this or a similar mark under all circumstances. Each case must be decided on its own particular facts. Sunbeam Lighting Co. v. Sunbeam Corp., 183 F.2d 969 (9 Cir., 1950), cert. denied 340 U.S. 920, 71 S.Ct. 357, 95 L. Ed. 665. The protection afforded a trademark or service mark varies with the type of word selected. A coined word such as *Kodak* is given a far wider ambit of protection than a common word like *Admiral.* Admiral Corporation v. Price Vacuum Stores, Inc., 141 F.Supp. 796 (E.D.Pa., 1956).

■■ *Allstate* clearly is not a coined word. It is composed of two common words, *all* and *state*, various combinations or variations of which have been used by at least 21 other companies in Lousiana. El Chico, Inc. v. El Chico Cafe, 214 F.2d 721 (5 Cir., 1954). The extent of interest in a service mark which is not a coined word was set out in Landers, Frary & Clark v. Universal Cooler Corp., 85 F.2d 46 (2 Cir., 1936):

> "The suggestion has at times also been made that the doctrine does not apply to a mark which is not coined, * * *. It is quite true that, just as a coined word is easier to protect than a word of common speech upon goods on which the owner has used it, so it is easier to prevent its use upon other kinds of goods. The proprietary connotation,—'secondary meaning,'—of a word of common speech is harder to create and easier to lose, and its fringe or penumbra does not usually extend so far as that of a coined word. But that is matter of proof and of that alone; if the owner can in fact show that the fringe does extend to other goods there is no reason why his interest should not be recognized. His interest is exactly the same as though the mark were a coined word (his reputation and his chance to extend his sales); and while the plagiarist

has a better excuse because the law recognizes that all have an interest in the free use of the language, the conflict is between the same interests as when the owner seeks to protect the name upon goods which he has sold. * * * [T]*he wrong is in diverting customers by deception and that it cannot be a deception to use a mark among customers who do not know its proprietary connotation.* * * * " (Emphasis added.)

██ Since Allstate Insurance Company's mark is "weak," it must show here that infringement or unfair competition exists *in the insurance field* or that Allstate has acquired a "secondary" meaning so widespread that there would be a likelihood or possibility of confusion in the public mind as to the source of the services of defendant. Where a trademark is itself "weak," minor additions may effectively negate any confusing similarity. Callman, Unfair Competition and Trade Marks, 2nd Ed., p. 1478.

It should be noted that protection of secondary meaning sometimes arises under state law. Speaker v. Shaler Co., 87 F.2d 985, at 987 (7 Cir., 1937). However, principles of unfair competition approved by federal courts also have been approved by Louisiana courts and are for all practical purposes the same. Huth v. Rosenzweig, 27 So.2d 742 (La.App., 1946). If Allstate Investment Corporation had itself engaged in the sale of insurance, there would be little difficulty in finding that the penumbral fringe cast by the word *Allstate* would cover the insurance field. The case of Sears, Roebuck & Co. v. All States Life Insurance Co., 246 F.2d 161 (5 Cir., 1957), although affirming the trial judge's finding that there was no confusion would not have foreclosed such a decision. At page 170, the Court said:

" * * * We think it clear * * * that the similarity of the names even with the inclusion in appellee's name of the word 'Life,' together with the evidence introduced on the trial, would have been sufficient to author-

ize a finding by the trial court of the possibility and perhaps even the likelihood of confusion. This is quite different, however, from our being justified in reversing the findings of the trial court made on ample evidence * * * as clearly erroneous. We conclude that no error was committed by the trial court in finding that there was no infringement of appellant Allstate's service marks."

██ The record in the present case does not show a single instance of the sale of insurance by defendant. In fact the evidence shows positively that there were none. Plaintiff relies, however, upon the connexity between Allstate Investment Corporation and Edwin Jones Insurance Agency, Inc., to show infringement in the insurance field. As noted above, the insurance agency and the mortgage company do have a common president and majority stockholder, common offices, and a common sign. However, plaintiff failed to prove, directly or inferentially, that Edwin Jones Insurance Agency, Inc., exists as a separate entity to pirate plaintiff's business, to skirt the prohibitions of the law or to take advantage of the reputation Allstate enjoys in the insurance field. Thus, it would be most improper and inequitable to disregard the separate corporate entities where it has not been shown that this was intended for a wrongful or unfair use. See 13 Am.Jur., Corporations, §§ 7 and 8.

As noted in Landers, supra, plaintiff is entitled to protection in areas other than automobile insurance if it has shown that a secondary meaning of the name *Allstate* has extended there. See Sears, Roebuck & Co. v. All States Life Insurance Co., 246 F.2d 161 (5 Cir., 1957); Pure Foods, Inc. v. Minute Maid Corp., 214 F.2d 792 (5 Cir., 1954); Sears, Roebuck and Co. v. Johnson, 219 F.2d 590 (3 Cir., 1955); El Chico, Inc. v. El Chico Cafe, 214 F.2d 721 (5 Cir., 1954).

While it is common knowledge that *Allstate* is associated with the automotive

products of Sears, Roebuck and Company, there has been no claim of infringement of any registered mark other than *Allstate* as owned by the plaintiff in its insurance business. Since there has been no attempt to prove infringement other than of the "service mark" of plaintiff, relief can be granted here only if it has been established by the evidence that there is confusion in the public mind to the effect that the services rendered by Allstate Investment Corporation originated with, or were directly connected with Allstate Insurance Company. In other words, "unfair competition" must be shown to have been carried out by defendant.

■ The evidence not only does not show that such confusion exists, or has existed, in the public mind as to the source or origin of defendant's services, but on the contrary defendant has established, by the greater weight of the evidence, that there is no such confusion, or even a likelihood of it.

■ It is true that there have been some instances of misdirected mail and telephone calls. We are convinced, however, that these were the result of mere carelessness on the part of the postal service or of persons consulting the Shreveport telephone directory, where Allstate Insurance Company and Allstate Investment Corporation are listed alphabetically, the latter following immediately after the former. To a reasonably careful person, however, separate addresses and telephone numbers are shown, and we are sure that innumerable mistakes of a similar nature have been made as between other companies or concerns, such as those many businesses having names beginning with commonly used words like *Louisiana, Shreveport, Caddo, Tri-State, Ark-La-Tex, Twin-City, National, Southern,* and many others to which attention might be adverted. This does not mean that there is confusion in the public mind as to the nature of the products or services offered, but as we have said, it is due simply to carelessness.

Such is not enough to justify granting the drastic relief demanded here. Standard Accident Ins. Co. v. Standard Surety and Casualty Co., 2 Cir., 53 F.2d 119, 121; Polaroid Corp. v. Polarad Electronics Corp., D.C., 182 F.Supp. 350; Everest and Jennings, Inc. v. E & J Manufacturing Co., 9 Cir., 263 F.2d 254; S. C. Johnson & Son, Inc. v. Johnson, 6 Cir., 266 F.2d 129, 141.

The evidence shows without dispute that nearly 97% of defendant's mortgage investment business originates—not from its advertisements or any public awareness of its name—but from builders and realtors with whom defendant has established direct business contacts, a class of people who surely know that defendant has no connection whatever with plaintiff. Put another way, during the year prior to filing of this suit, defendant brokered 510 loans, of which realtors brought in 245, builders 248, and only 17 came from other sources. It should be perfectly clear, as well, that the institutions to whom defendant sold these loans knew that defendant and plaintiff had no connection with each other.

■ While this Court is not bound, in passing upon a case of this nature, by a State administrative determination, still such a finding, made by an impartial public official, is highly persuasive on the question of allegedly deceptive similarity of names or public confusion. The Secretary of State of Louisiana, pursuant to LSA–R.S. 12:203, admitted defendant to do business in this State in 1956, thereby determining that its name and that of plaintiff (which was admitted in 1938) were not deceptively similar. We find this factor to be most persuasive here. Guardian Life Ins. Co. of America v. Guardian National Life Ins. Co., D.C., 158 F. Supp. 623; Sears, Roebuck & Co. v. All States Life Ins. Co., supra.

Plaintiff has been forced to admit that, notwithstanding its claims of "unfair competition" by defendant, its insurance business has continued to spiral upward

nationally, in Louisiana and in Caddo Parish (Shreveport) since 1956 when defendant began doing business here. The figures are as follows:

| YEAR | DOLLAR AMOUNT | PER CENT |
|---|---|---|
| | FIRE INSURANCE Increase | |
| 1956 | 37,659.00 | 86.2 |
| 1957 | 50,804.00 | 62.4 |
| 1958 | 71,783.00 | 54.3 |
| 1959 | 93,527.00 | 45.9 |
| 1960 | 97,301.00 | 32.7 |
| ½ 1961 | 63,757.00 | 36.5 |
| | CASUALTY INSURANCE Increase | |
| 1956 | 313,438.00 | 22.2 |
| 1957 | 466,630.00 | 27.0 |
| 1958 | 764,764.00 | 34.5 |
| 1959 | 830,750.00 | 28.1 |
| 1960 | 501,379.00 | 13.2 |
| ½ 1961 | 232,141.00 | 11.1 |

While plaintiff alleges that it and defendant are in "direct competition," such is in truth simpy not so. Plaintiff is in the insurance business; defendant is in the mortgage banking business. This major difference in the character of services rendered by each makes it all the less likely that there has been, or will be confusion in the public mind. American Automobile Ins. Co. v. American Auto Club, 9 Cir., 184 F.2d 407; Sears, Roebuck & Co. v. All States Life Ins. Co., supra.

People who buy insurance from Edwin Jones Insurance Agency, Inc., are bound to know they are not dealing with plaintiff. Moreover, there is nothing wrong or unfair for an insurance agency to be connected through stock ownership with a mortgage brokerage firm. Indeed, most such brokerage concerns have such an affiliation. We are impressed that plaintiff did not see fit to make the Edwin Jones Insurance Agency, Inc., a defendant in this case, if that was the competition it actually was striking against.

Three of Shreveport's leading real estate attorneys and the owners of two of its outstanding insurance adjustment firms testified that in all their dealings with the public they found no instances of confusion in the public mind between plaintiff and defendant. Surely, if such confusion actually existed, these gentlemen would have learned of it.

Edwin Jones Insurance Agency, Inc., has in excess of 3000 insurance accounts including more than 5000 policies. All of these are registered in the office of the Louisiana Insurance Commission, with names and addresses of the policyholders being readily available to plaintiff. It is highly significant, we think, that with such fertile fields to plow—if there was confusion—plaintiff did not produce a single policyholder to testify that he had been "confused" or misled and had thought his insurance was carried by plaintiff, or had placed his insurance because of plaintiff's reputation in this field.

Considering all of the above, and having made a careful assessment of the entire record, plus the fact that all of defendant's advertisements show it is in the mortgage loan business with head-

quarters in Shreveport, whereas plaintiff's advertisements show that it is in the insurance business with its home office at Skokie, Illinois, we are convinced, *and find as a fact*, that there is *no* infringement, *no* unfair competition by defendant, and *no* confusion in the public mind by defendant's use of the name *Allstate Investment Corporation*.

For these reasons, therefore, we find that plaintiff's claims for equitable relief and for damages are without merit and should be denied. Hence, there should be judgment for defendant, rejecting plaintiff's demands at its cost.

A proper decree should be presented.