**LeFEBURE CORPORATION, Plaintiff,**

v.

**LEFEBURE, INCORPORATED, Defendant.**

**Civ. A. No. 68–58.**

United States District Court
E. D. Louisiana,
New Orleans Division.
April 26, 1968.

Gibbons Burke, New Orleans, La., for plaintiff.

Neville M. Landry, New Orleans, La., for defendant.

## MEMORANDUM OPINION

BOYLE, District Judge:

We have for decision two motions, one urged by plaintiff, LeFEBURE Corporation,[1] for a preliminary injunction, and the other urged by defendant, LEFEBURE, Incorporated, for dismissal of the complaint and/or summary judgment.

These motions were argued on February 14, 1968 and submitted to the Court on the pleadings, affidavits, answers to interrogatories and the various exhibits filed into the record.

The record as thus constituted reveals that in 1892 the Lefebure family commenced business in Iowa. In 1897 the business was incorporated under the laws of the State of Iowa and took the style "The Lefebure Ledger Company." In 1926 that corporation changed its corporate style to "LEFEBURE CORPORATION." The business remained an Iowa corporation until 1956 when it was incorporated in Delaware under the same name, "LEFEBURE CORPORATION." Then in 1965 the business was reincorporated under the laws of Iowa, again under the style of "LEFEBURE CORPORATION."

Plaintiff is, and for many years was, engaged in the business of manufacturing, selling, and distributing metal bank and office equipment, business forms, encoding of business accounts, safes, locks, safety deposit boxes, prefabricated bank buildings and related items. Plaintiff has registered the name "LeFebure" with the U. S. Patent Office as a trademark in two classes and as a service mark in two classes.[2]

1. The plaintiff identifies itself in the caption of its complaint as "LeFEBURE CORPORATION" and is similarly referred to in various exhibits made part of the record. Plaintiff's registered trade and service marks are in the form "LeFebure." However, in its articles of incorporation the plaintiff declares its name to be "LE FEBURE CORPORATION."

The defendant in its corporate charter declares its name to be "LEFEBURE, INCORPORATED."
Although mention is here made of the variation in the manner in which the plaintiff's name appears, such variation, being insubstantial, is unimportant to the disposition of these motions.

2. Plaintiff registered the trademark "Le-Febure" on March 1, 1960 for: Metal

The defendant, LEFEBURE, Incorporated, was organized under the laws of the State of Louisiana on August 18, 1967. Its articles of incorporation provide that the purposes for which it is organized, among others, are "to purchase or otherwise acquire, order, contract for, lease, sell or in any manner dispose of, lease, trade, exchange or take in trade all kinds and types of office and bank equipment and fixtures, including bank vault doors, fire resistive doors, drive up and walk up windows, night depositories, safe deposit boxes, vault ventilators, steel partitions and vault linings * * * and all kinds of office and bank equipment which may now or hereafter be in use * * * * "

After its incorporation in Louisiana, the defendant qualified to do business as a foreign corporation in twenty other States [3] in furtherance of its charter authority to conduct its business and "promote its objects within or without the State of Louisiana."

The plaintiff has filed this suit seeking in substance to enjoin the use by defendant in its corporate name or otherwise plaintiff's name and trademark "LeFEBURE" or any other name which is deceptively similar thereto or a colorable imitation thereof.

The affidavit of defendant's president and majority stockholder, Samuel A. Miceli, Jr.,[4] candidly reveals the purpose for which it was incorporated. In substance, that affidavit relates a course of

negotiation between plaintiff's representatives and Miceli on behalf of Samson Safe Company, Inc. (which company was and is engaged in the same type of business as the plaintiff) and the plaintiff corporation concerning the possibility of the plaintiff purchasing Samson Safe Company, Inc. (referred to hereinafter as "Samson"). When these negotiations failed to terminate in the purchase of Samson and because Miceli felt that he had in good faith revealed to the management of the plaintiff during the course of those negotiations certain claimed trade secrets which would now be helpful to the plaintiff as a competitor, the defendant corporation was formed in an attempt to increase the bargaining power of Samson in that the new "LEFEBURE, Incorporated" would then be offered for sale together with Samson.

It is clear to us from the affidavit of Miceli, dated February 6, 1968 and that of Kenneth W. Watts, President of the Plaintiff, that Miceli's action in incorporating the defendant in Louisiana under a name practically identical to plaintiff's corporate style and qualifying to do business in twenty other States, in all of which and more the plaintiff does business, was nothing more than an attempt to force the plaintiff to buy Samson Safe Company, Inc. Thus, there is no question but that the formation of "LEFEBURE, Incorporated" was retaliatory by design. However, it is clearly reflected

or steel bank and office equipment—namely, files, cabinets, desks, stands, trays, sorters, work surfaces, cash handling units, and mail handling equipment—in Class 32.

Plaintiff registered the same trademark on April 19, 1960 for: Business forms and index guides, in Class 37.

On January 3, 1961 plaintiff registered the service mark "LeFebure" for: Numerical encoding of business accounts for electronic processing, in Class 101.

On July 3, 1962 plaintiff registered the same service mark for: Design of business equipment and special arrangement of units thereof in a work area to achieve maximum work flow therethrough, in Class 103.

3. In addition to Louisiana, the defendant has qualified to do business in the following twenty States: Alabama, Arkansas, Connecticut, Florida, Georgia, Kentucky, Maine, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Jersey, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Texas and Virginia.
Plaintiff is engaged in interstate commerce in all of the States in which the defendant has qualified to do business, plus other States and the District of Columbia. See the affidavit of Kenneth W. Watts.

4. Samuel A. Miceli, Jr. is also an officer in, and the owner of 48 of a total of 100 shares authorized to be issued by, Samson Safe Company, Inc.

by the record as now constituted that the defendant has not yet engaged in any business whatsoever, its sole activity thus far being its qualification to do business as a foreign corporation in a significant number of States as aforementioned.

It is against the factual setting above described that the Court must determine the merit of the two motions now before it. Since the motion for a preliminary injunction would fall if the motion to dismiss and/or for summary judgment was granted, the latter motion will be considered and disposed of first, although some considerations are pertinent to both motions.

The defendant urges that the suit should be dismissed on the grounds that this Court lacks jurisdiction, that the complaint fails to state a claim due to prematurity, and, finally, that the plaintiff has been guilty of laches.

The complaint asserts jurisdiction based upon diversity of citizenship and also under the trademark laws of the United States. The Court finds that jurisdiction exists whether viewing the complaint as asserting a cause of action for trademark infringement, unfair competition, or both.

The defendant urges that the plaintiff is foreclosed from bringing suit in a United States District Court sitting in diversity in the State of Louisiana since, having failed to qualify to do business in this State, it lacks capacity to bring suit in the courts of Louisiana by virtue of the provisions of La.R.S. 12:211(A).[5]

This reasoning was sanctioned by the United States Supreme Court in Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) wherein a Mississippi statute similar to La.R.S. 12:211(A) was involved. However, this contention is without merit here since the facts of this case bring the plaintiff within the clearly defined exception to the application of La.R.S. 12:211(A), namely, that this statute does not apply to corporations engaged in interstate rather than intrastate commerce, regardless of the failure of such corporation to qualify to do business in Louisiana.

The circumstances which bring the plaintiff within this exception include the fact that the plaintiff corporation does not maintain any stock of merchandise, has no office, and owns no property within the State of Louisiana. Plaintiff does have three resident representatives in Louisiana and a representative residing in the State of Mississippi who take orders from customers in Louisiana and transmit those orders to Cedar Rapids, Iowa, for acceptance or rejection. These representatives have no authority to bind the plaintiff and the company bills the consumer directly. Plaintiff's representatives are compensated solely on a commission basis and must themselves bear the expenses incident to procuring orders.[6] The company does not control the sales solicitations of its represenatives, but does furnish some advertising material and does hold infrequent training meetings in Iowa.

---

5. La.R.S. 12:211(A) reads:
"No corporation doing business in this state shall be permitted to present any judicial demand before any court of this state, unless it has complied with the laws of this state for doing business herein, and has paid all taxes, excises, and licenses due to the state. This Section shall not be construed to prevent the bringing of a cause of action against any corporation."

6. The plaintiff does reimburse its representatives, for their first year of employment only, for the actual cost of an answering service and a post office box,

said reimbursement not to exceed, however, $33.35 per month. In addition, the company pays one-half of the cost of such items as flowers for grand openings of financial institutions which have purchased company products and similar incidental costs. The representative pays the other half of such costs. However, the one-half paid by the company may not exceed in any one year one-half of one percent of the total sales procured by that representative during the prior year. Finally, the company pays the expenses of its representatives incident to their attendance at company sales meetings and company conventions held biennially.

The company has for many years advertised its products, and has expended $371,000 for advertising in various "trade" publications during the past three years. Approximately twenty-five percent of the plaintiff's representatives are required to submit a weekly "Order Register" setting forth the contacts made during the week and the results thereof. The plaintiff does provide group insurance, a hospitalization plan, and income disability insurance for its representatives, but they participate in no bonus or retirement program.

The total sales of plaintiff in Louisiana for the last three years approximates $750,000, which amount constitutes only a small fraction of plaintiff's total interstate sales volume. In addition to Louisiana, the plaintiff sells equipment and merchandise to banks and other financial institutions throughout the United States. Most of the equipment sold by the plaintiff does not require installation by the company. However, certain highly technical equipment does require expert installation, which service the company provides as a part of the cost of the equipment. These installation charges amount to approximately two and one-half percent of the sales price of the item requiring installation.

In addition, most of the equipment sold by the plaintiff requires no maintenance by the company. However, in the rare instances involving highly technical equipment, the company does provide maintenance service pursuant to an agreement between the company and the customer. The total of fees accruing to the company in payment for such services is approximately two-tenths of one percent of the total sales.

It is the opinion of this Court that the above described activity on the part of the plaintiff does not prevent its inclusion within the judicially recognized exception to La.R.S. 12:211(A).[7] Therefore, this Court does have diversity jurisdiction in this case.

Even if jurisdiction could not be supported by diversity of citizenship, it would nonetheless exist by virtue of Title 15 U.S.C. § 1121[8] and Title 28 U.S.C. § 1338.[9] It is clear that insofar as the complaint seeks relief for alleged infringement of trademarks (and service marks) registered in the United States Patent Office, there is jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). That being so, this Court has pendent jurisdiction over the related claim of unfair competition under 28 U.S.C. § 1338(b).[10]

7. See Graham Mfg. Co. v. Rolland, 191 La. 757, 186 So. 93 (1939); Hattiesburg Manufacturing Co. v. Pepe, 140 So.2d 449 (La.App., 1962); Quaker Hill v. Guin, 95 So.2d 370 (La.App., 1957); Reynolds Metal Co. v. T. L. James & Co., 69 So.2d 630 (La.App., 1954); and, J. R. Watkins Co. v. Goudeau, 63 So. 2d 161 (La.App., 1953).

8. Title 15 U.S.C. § 1121 reads:
"The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

9. Title 28 U.S.C. § 1338 reads:
"(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.
"(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws."

10. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938); rehearing denied 305 U.S. 675, 59 S.Ct. 356, 83 L.Ed. 437; Hazel Bishop, Inc. v. Perfemme, Inc., 314 F.2d 399, 5 A.L.R. 3d 1031 (2nd Cir., 1963); and Volkswagenwerk Aktiengesellschaft v. Church, 256 F.Supp. 626 (S.D.Cal., 1966). It might here be noted that there is considerable controversy as to whether or not a Federal cause of action exists for

Having determined that this Court has diversity as well as Federal question jurisdiction, the Court must ascertain what law is to be applied to the substantive issues raised by the complaint as a prerequisite to evaluating the validity of the other grounds defendant urges in support of its motion.

■ Since we are not involved with a trademark registered under Louisiana Law,[11] the trademark infringement aspects of this litigation are governed exclusively by Title 15 U.S.C. §§ 1114 and 1116.

■ The unfair competition aspect of this litigation presents a somewhat different situation. There is some question as to whether Federal or State (Louisiana) law applies to the complaint insofar as it sets forth a claim of unfair competition.[12] However, it would appear that this question may be of more academic than practical concern since the "principles of unfair competition approved by the federal courts also have been approved by Louisiana courts and are for all practical purposes the same."[13]

■■ Defendant contends that plaintiff's suit is barred by laches in that plaintiff has been doing business in Louisiana for many years and should have availed itself of the benefits and protections incident to qualifying to do business in this State. Having failed to do so, the defendant argues, plaintiff has no standing to complain that defendant has incorporated under the style "LEFEBURE, Incorporated." Defendant points to La.R.S. 12:4, subd. D[14] in support of its position. Although standing alone La.R.S. 12:4, subd. D might buttress defendant's contention, it must be read in connection with La.R.S. 12:4, subd. E.[15] Construing these two subsections together, it is clear that a foreign corporation does not have to qualify to do business nor incorporate in this State in order to protect its corporate name, when usurpation of its name amounts to unfair competition or trademark infringement under Federal or State law. Therefore, if plaintiff cannot lose its right to relief by failing to take the action that defendant contends it should have taken,

---

unfair competition. In this regard see Sears Roebuck & Co. v. All States Life Insurance Co., 246 F.2d 161, 170–171 (5th Cir., 1957), cert. den. 355 U.S. 894, 78 S.Ct. 268, 2 L.Ed.2d 192 (1957), and the *Church* case, supra. See also 15 U.S.C. § 1126(h). If the Lanham Act did create a Federal cause of action for unfair competition, then 15 U.S.C. § 1121 standing alone would support jurisdiction without any reference to the pendent jurisdiction over such a claim conferred by 28 U.S.C. § 1338(b). However, assuming arguendo, that there *is* no Federal cause of action for unfair competition, but rather only the common law of the States with regard thereto, then, in the absence of diversity, Federal jurisdiction over an unfair competition claim would of necessity have to be supported by 28 U.S.C. § 1338(b).

11. La.R.S. 51:211 et seq.

12. See footnote 10, supra.

13. Allstate Insurance Co. v. Allstate Investment Corp., 210 F.Supp. 25 (W.D. La., 1962), aff'd 328 F.2d 608 (5th Cir., 1964). See Guardian Life Ins. Co. of America v. Guardian National Life Ins. Co., 184 F.Supp. 851 (E.D.La., 1960),

particularly footnote 7, p. 853 of the case report.

14. La.R.S. 12:4, subd. D reads:

"The corporate name shall not be the same as, nor deceptively similar to, the name of any foreign corporation not then authorized to do business in this state, if the foreign corporation has within the last preceding twelve months signified an intention to secure incorporation in this state under such name, or to be authorized to do business as a foreign corporation in this state under such name, by filing notice of that intention with the Secretary of State, unless the written consent to the adoption of such name or deceptively similar name has been given by the foreign corporation, and is filed with the articles. However, once the notice of intention to incorporate in this state is filed, it cannot be renewed."

15. La.R.S. 12:4, subd. E reads:

"Nothing in this Section shall abrogate or limit the law as to unfair competition or unfair practice in the use of trade names, nor derogate from the principles of law or the statutes of this state or of the United States with respect to the right to acquire and protect trade names."

then laches as a ground for dismissal is unavailing.

The defendant seeks dismissal on the ground that the suit for injunctive relief is premature and thus the complaint fails to state a claim. The alleged prematurity arises from the fact that the defendant has yet to transact any business.

The defendant urges that there can be no infringement of trade or service marks unless and until there is a "use" of such marks within the meaning of Title 15 U.S.C. § 1114. Likewise, defendant contends that there can be no unfair competition until there is "competition."

Plaintiff, on the other hand, argues that it should not be required to keep the defendant under constant surveillance in order to ascertain if and when it commences to engage in business under a corporate name, the use of which plaintiff contends would constitute infringement and unfair competition.

The Court is convinced that the plaintiff's position correctly states the law applicable to this case. In Chemical Corporation of America v. Anheuser-Busch, Inc., 306 F.2d 433, 439, 2 A.L.R. 3d 739 (5th Cir., 1962), cert. den. 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963), the Court, through Judge Tuttle, wrote:

"We think, therefore, that the threat of infringement could be the basis of an injunction. Certainly it would not be necessary for the plaintiff, in such case, to wait until actual infringement had occurred before bringing the action to enjoin."

Surely, if the use by the defendant of the word "LEFEBURE" in its corporate style would constitute infringement or unfair competition, or both, were the defendant actually conducting business under that name, then the incorporation of the defendant under that style for the purposes set forth in its articles of incorporation, combined with its qualification to do business in many other states, must fall within the scope of threatened infringement. This conclu-sion is inescapable when the reasons for the defendant's incorporation as related by its President are recalled. If the objective of defendant's President in employing "LEFEBURE" in its corporate style in twenty-one of the States in which plaintiff is active—to improve the bargaining position of Samson—is not achieved by the present inactivity, we are convinced that President Miceli would soon find the conclusion inescapable that, if incorporation alone did not, actual competition would likely force plaintiff to negotiate the purchase of Samson. And if it did, Miceli doubtlessly would throw in the defendant corporation as lagniappe. But before Miceli's loaded and well aimed scatter gun can be discharged, we believe we should plug the barrels.

Further authority for the proposition that threatened infringement or unfair competition may be judicially restrained is found in Standard Oil Co. v. Standard Oil Co. of North Dakota, 123 F.Supp. 227 (D.N.D., 1954) wherein the following language is found:

"Defendants argue that this action, insofar as it seeks to restrain trademark infringement is concerned, is premature because there is no showing that defendants have used the trademark word on any products. It is true that the defendants have not yet actually engaged in business. There is, however, ample evidence of an intent to use the corporate defendant's name in connection with the sale of products in competition with the plaintiff. The corporate purposes of the defendant corporation are substantially the same as those of the plaintiff * * *."

Similar contentions of prematurity based upon failure to commence business were rejected in Standard Oil Co. of New Mexico v. Standard Oil Co. of Cal., 56 F. 2d 973 (10th Cir., 1932) and Standard Oil Co. of Maine v. Standard Oil Co. of New York, 45 F.2d 309 (1st Cir., 1930).

In view of the foregoing, the motion of the defendant for dismissal of the complaint and/or summary judgment is denied.

We pass to consideration of the plaintiff's motion for a preliminary injunction. Plaintiff seeks to enjoin the defendant from directly or indirectly using the name or trademark "LeFEBURE" or any other mark or name which colorably imitates the plaintiff's name, "LeFEBURE Corporation." The plaintiff further seeks to have the defendant ordered to change its corporate name to some other name which does not colorably imitate "LeFEBURE Corporation." It also seeks to have the defendant ordered to take steps to amend its qualification in States in which it has qualified to do business in order to give effect to any change in the defendant's corporate name which the Court may order.

Based upon the present state of the record, the Court finds that if the defendant did commence business, in accordance with the purposes set out in its articles of incorporation, under the name "LEFEBURE, Incorporated," such conduct would constitute infringement of plaintiff's trade and service marks "LeFEBURE."

■ In order to establish infringement, plaintiff need only show that the name adopted by the defendant is so similar to its trade or service marks as to be likely to cause confusion among reasonably careful purchasers.[16]

■ There can be no doubt that the defendant's corporate style "LEFEBURE, Incorporated," whether LeFebure appears as "LeFebure" or "LeFEBURE" or "LEFEBURE," is a colorable imitation of, and deceptively similar to, the plaintiff's marks "LEFEBURE." "LeFEBURE" is not a common word or a generic term. It likewise has no geographical connotation. The word "LeFEBURE" is in the nature of a

"coined" word and is easier to infringe than a mark which is composed of a common word or combination of common words.[17] The plaintiff sells, and to a limited degree installs and/or services, very specialized equipment to an extremely select clientele. If and when the defendant engages in business under the name "LEFEBURE, Incorporated," there would be, as a matter of law, a likelihood of confusion among reasonably careful purchasers in view of all the factors set out hereinbefore.

The Court is also convinced that if the defendant engages in business, as described in its purpose clause of its charter, under the name "LEFEBURE, Incorporated" such activity would constitute unfair competition as that term has been construed under Federal and Louisiana law. There can be no question that if the defendant engages in business there would be a substantial likelihood of confusion in the minds of those in the market for the type of equipment sold by the plaintiff as to the source of similar equipment if offered for sale by the defendant under the name "LEFEBURE, Incorporated," thereby subjecting plaintiff to irreparable injury.

In Straus Frank Company v. Brown, 246 La. 999, 169 So.2d 77 (1964) the Court stated, "The law of this State has long recognized that trade names will be protected against unfair use, simulation, or imitation." The same Court also notes that " * * * it is a prerequisite to injunctive relief that fraud be established on the part of the defendant and the burden of establishing that fraud is upon the plaintiff."

■ In the opinion of this Court the requirement that "fraud" be established, as a prerequisite under Louisiana law to

---

16. Abramson v. Coro, Inc., 240 F.2d 854 (5th Cir., 1957). In *Abramson* the Court said, "The applicable statute, 15 U.S.C.A. § 1114(1) requires only that in an action for trade-mark infringement the colorable imitation be ' * * * likely to cause confusion or mistake.' " The same Court, citing Pure Foods, Inc. v. Minute Maid Corp., 214 F.2d 792 (5th Cir., 1954),

stated, " 'To authorize preventive relief through the issuance of an injunction proof of actual damage is not necessary, but the likelihood of damage is sufficient.' "

17. See Allstate Insurance Co. v. Allstate Investment Corp., 210 F.Supp. 25 (W.D. La., 1962), aff'd 328 F.2d 608 (5th Cir., 1964).

injunctive relief for alleged unfair competition, is satisfied by a showing of purposeful appropriation by the defendant of the plaintiff's trade name to divert, or which might be reasonably expected to divert, to itself the goodwill, or at least a measure thereof, which the plaintiff has cultivated and enjoys in this and other States in connection with the name "LeFEBURE Corporation."

As noted earlier with reference to infringement, this is not a case involving a generic, common, or geographically-connected name—the use of which could be coincidental or nonconfusing. Here the use of "LEFEBURE" in its corporate style by the defendant, if its threatened competition with plaintiff becomes actual, would amount, as a matter of law, to unfair competition in view of all the facts and circumstances of this case.

■ Finally, the defendant urges that in the course of the negotiations between the plaintiff and Samson concerning the purchase of the latter by the former, Samson revealed to the plaintiff certain claimed trade secrets which the plaintiff could now use against Samson. The defendant claims that the plaintiff acted in bad faith and that such conduct precludes the plaintiff from obtaining any equitable relief for unfair competition under the "clean hands" doctrine. The Court is unimpressed with this argument since the Samson Safe Company, Inc. is the only entity entitled to complain, if, indeed, the plaintiff did negotiate in bad faith to obtain an unfair advantage, and the Samson Safe Company, Inc. is not a party to this suit.

Accordingly, we hold that plaintiff is entitled to preliminarily enjoin the defendant, LEFEBURE, Incorporated, from engaging in the same or similar business as that in which the plaintiff, LeFEBURE Corporation, is engaged in this State or any other State as long as the defendant's corporate style includes the word "LeFEBURE" or "LEFE-BURE" or any other word which is deceptively similar thereto or is a colorable imitation thereof.

Counsel for plaintiff, after serving a copy upon counsel for defendant, will submit a decree.