**AVONDALE SHIPYARDS, INC.**

v.

**PROPULSION SYSTEMS, INC.**

Civ. A. No. 69–2769.

United States District Court,
E. D. Louisiana,
New Orleans Division.

Sept. 29, 1971.

342

Raymond J. Salassi, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff.

Carl J. Schumacher, Jr., Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., for defendant.

JACK M. GORDON, District Judge:

This matter came before the Court on motion of the plaintiff, Avondale Shipyards, Inc. (hereinafter referred to as "Avondale"), to dismiss a counterclaim filed by the defendant, Propulsion Systems, Inc. (hereinafter referred to as "Propulsion"). Avondale's stated basis for the motion is the contention that Propulsion lacks the capacity to sue or bring any judicial demand in that it is a foreign corporation which has allegedly transacted business in Louisiana without being properly authorized to transact

such business as required by the Louisiana Foreign Corporation Law. Thus, argues Avondale, the provisions of § 314 of Title 12 of the Louisiana Revised Statutes prohibit Propulsion from presenting any judicial demand in Louisiana unless and until such time as it has been duly authorized to transact business in this state.

This suit was originally instituted by Avondale against Propulsion in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana. It was subsequently removed by Propulsion to this Court, and after answering, Propulsion filed the counterclaim in question.

The parties agree that if this matter were in the Louisiana State Courts, as it was prior to the removal, Propulsion would not be permitted to assert the counterclaim, or any other judicial demand until such time as it had been authorized to transact business as required by the Louisiana Foreign Corporation Law, if, in fact, Propulsion had theretofore transacted business in Louisiana within the meaning of Louisiana law. In this connection, Louisiana Revised Statutes 12:314 provides, in part:

No foreign corporation transacting business in this state shall be permitted to present any judicial demand before any court of this state, unless it had been authorized to transact such business. LSA–R.S. 12:314(A) (1968).

The parties do not agree, however, that the same result should follow in view of the fact that the counterclaim is being asserted in federal court, and, in any event, the parties disagree as to whether the activities of Propulsion in Louisiana have been such as to constitute transacting business within the meaning of Louisiana law. Propulsion contends that all of its activities in Louisiana were in pursuance of interstate commerce, and, therefore, that it was not required to qualify in Louisiana.

Avondale, relying primarily on the jurisprudence established by decisions following Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), such as Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), and Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949), contends that this Court, sitting in a case in which jurisdiction is based solely on diversity, is bound to apply the law of Louisiana in determining whether Propulsion has the capacity to bring the counterclaim in question. On the other hand, Propulsion, relying on the decision of the United States Supreme Court in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1965), argues that this Court's decision must rest upon the application of Rule 13(a) of the Federal Rules of Civil Procedure, and that since the counterclaim is a compulsory counterclaim within the scope of such rule, under the ruling of the United States Supreme Court in Hanna v. Plumer, it may be asserted in this Court, notwithstanding the fact that an opposite result would occur in the Louisiana state courts.

Inasmuch as this Court agrees with the contention of Propulsion with regard to the applicable law in determining Propulsion's capacity to bring the counterclaim, it is not essential for purposes of deciding this motion that the Court resolve the factual issue concerning whether Propulsion's activities in Louisiana had been such as to require it to become qualified as a foreign corporation under Louisiana law. However, on the record before the Court, even if the Court were required to make such a decision, the Court does not believe that Avondale has discharged the burden incumbent upon it as mover in establishing that Propulsion transacted such business in Louisiana as to make applicable the "door-closing" provisions of Louisiana Revised Statutes 12:314.

In resolving the question of the law applicable to a determination of Propulsion's capacity to assert the counterclaim, one must start with the proposition that the counterclaim quite clearly is a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure, as it arises out of the identical transactions that are the subject matter of Avondale's original complaint, and it does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction.[1]

Thus, we start with the proposition that the Federal Rules permit, if not require, the assertion of a counterclaim such as that now before the Court. The crucial question, however, is whether the rationale of Erie Railroad Company v. Tompkins, as interpreted in the line of cases beginning with Angel v. Bullington and Woods v. Interstate Realty Com-

---

1. Avondale, although conceding that the counterclaim is a compulsory counterclaim as defined by Rule 13(a), argues that Rule 13(a) should not be controlling in view of the provision therein to the effect that the pleader need not state the counterclaim if at the time the action was commenced the claim was the subject of another pending action. In this regard Avondale brings to the Court's attention the fact that at the time the counterclaim was asserted Propulsion had sued Avondale on the same claim in New York state courts. The New York suit had been dismissed by the trial court for lack of jurisdiction over Avondale, and such decision had been appealed. This Court concludes that the existence of the pending litigation in New York does not prevent the counterclaim from being pursued in this action as a compulsory counterclaim. In Union Paving Company v. Downer Corp., 276 F.2d 468, 470 (9th Cir. 1960), the court refuted such an argument, holding,

The exception enables a party to escape the waiver rule if he has already begun his action in another forum of his own choosing. It does not preclude him from electing instead to counterclaim his cause of action in the instant case. (footnotes omitted)

See also, 3 Moore's Federal Practice, § 13.14(2) (2nd Ed. 1968).

pany, requires this Court to apply the law of Louisiana in determining Propulsion's capacity to assert the judicial demand set forth in its counterclaim. If this were the case, then, of course, the Court would have to conclude either that Propulsion could not assert its demand until such time as it had qualified under the Louisiana Foreign Corporation Law, or that such qualification is not necessary in that Propulsion's activities in Louisiana have not been such as to require such qualification as a prerequisite to assertion of a judicial demand.

Prior to the United States Supreme Court's decision in Hanna v. Plumer, this Court's decision as to the applicable law would have been more difficult. Although there were no controlling cases regarding resolution of the conflict between Federal Rule 13(a) and a different state rule, in a factual situation such as that here presented, cases of the Supreme Court involving capacity to bring an initial complaint where such complaint would be permitted under federal practice but prohibited in the forum state, resolved the conflict in favor of the rule of the forum state. In Woods v. Interstate Realty Company, for example, where a Mississippi statute similar to the Louisiana statute in the instant case was involved, the Supreme Court refused to recognize the right of a nonqualified Tennessee corporation to sue a Mississippi resident on the theory that:

> [A] right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case; that where in such cases one is barred from recovery in the state court, he should likewise be barred in the federal court. Woods v. Interstate Realty Company, 337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524, 1527 (1949).

Under this theory it would have appeared, superficially at least, that a federal court sitting in a diversity action would have to apply the forum state's exclusionary rule both to original demands or counterclaims, notwithstanding the existence of Rule 13(a) of the Federal Rules of Civil Procedure.

In Hanna v. Plumer, however, the Supreme Court was for the first time presented with the situation where there was a direct conflict between a Federal Rule of Civil Procedure and a state rule where the choice of rule would have a marked effect on the outcome of the litigation. In resolving this conflict the Supreme Court analyzed thoroughly the divergent lines of jurisprudence, and distinguished cases such as Woods v. Interstate Realty Company as involving situations where the federal rule is not as broad as the losing party urged, and there being no federal rule, state law was made applicable by the *Erie* doctrine. The Court said:

> There is, however, a more fundamental flaw in respondent's syllogism: the incorrect assumption that the rule of Erie R. Co. v. Tompkins constitutes the appropriate test of the validity and therefore the applicablity of a Federal Rule of Civil Procedure. The Erie rule has never been invoked to void a Federal Rule. It is true that there have been cases where this Court has held applicable a state rule in the face of an argument that the situation was governed by one of the Federal Rules. But the holding of each such case was not that Erie commanded displacement of a Federal Rule by an inconsistent state rule, but rather that the scope of the Federal Rule was not as broad as the losing party urged, and therefore, there being no Federal Rule which covered the point in dispute, Erie commanded the enforcement of state law. Hanna v. Plumer, 380 U.S. 460, 469–470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8, 16 (1965).

Moreover, with reference to the application of the *Erie* doctrine in a situa-

tion covered by one of the Federal Rules, the court said:

It is true that both the Enabling Act and the Erie rule say, roughly, that federal courts are to apply state "substantive" law and federal "procedural" law, but from that it need not follow that the tests are identical. For they were designed to control very different sorts of decisions. When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions. Hanna v. Plumer, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8, 16–17 (1965) (footnotes omitted).

The Supreme Court in Hanna v. Plumer concluded that there was a very strong public policy in favor of uniform application of the Federal Rules stating:

Although this Court has never before been confronted with a case where the the applicable Federal Rule is in direct collision with the law of the relevant State, courts of appeals faced with such clashes have rightly discerned the implications of our decisions.

"One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings, an area in which federal courts have traditionally exerted strong inherent power, completely aside from the powers Congress expressly conferred in the Rules. The purpose of the Erie doctrine, even as extended in York and Ragan, was never to bottle up federal courts

with 'outcome-determinative' and 'integral-relations' stoppers—when there are 'affirmative countervailing [federal] considerations' and when there is a Congressional mandate (the Rules) supported by constitutional authority." Lumbermen's Mutual Casualty Co. v. Wright, 322 F.2d 759, 764 (C.A. 5th Cir. 1963).

Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules. Cf. Herron v. Southern Pacific Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857. "When, because the plaintiff happens to be a non-resident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic." Guaranty Trust Co. of New York v. York, supra, 326 U.S. [99], at 108, 65 S.Ct. [1464], at 1469 [89 L.Ed. 2079]; Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 555, 69 S.Ct. 1221, 1229 [93 L.Ed. 1528]. Thus, though a court, in measuring a Federal Rule against the standards contained in the Enabling Act and the Constitution, need not wholly blind itself to the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts, Sibbach v. Wilson & Co., supra, 312 U.S. [1], at 13–14, 61 S.Ct. [422], at 426–427 [85 L. Ed. 479], it cannot be forgotten that the Erie rule, and the guidelines suggested in York, were created to serve another purpose altogether. To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Con-

gress' attempt to exercise that power in the Enabling Act. Hanna v. Plumer, 380 U.S. 460, 472–474, 85 S.Ct. 1136, 1144–1145, 14 L.Ed.2d 8, 17–18 (1965) (footnotes omitted).

Avondale argues that the Supreme Court's decision in Hanna v. Plumer is not applicable here, and has not changed the result which would have been reached in Woods v. Interstate Realty Company. It cites as authority for such proposition a 1968 decision of the United States District Court for the Eastern District of California in Power City Communications, Inc. v. Calaveras Telephone Co., 280 F.Supp. 808 (E.D.Cal.1968). Although the *Power City* case did not involve a counterclaim, it did involve an initial complaint filed by a Washington corporation in California. The Washington corporation, a construction company which had failed to obtain the necessary contractors license required by California law for contractors doing work in California prior to commencing such work was, under California law, forever prohibited from asserting a demand under such contract in California. The contractor asserted that in the federal court sitting in California it had capacity to sue under the provisions of Rule 17(b) of the Federal Rules, since, under that rule the capacity of a corporate plaintiff is governed by the laws of the state of its incorporation. In that case the plaintiff would have had capacity to sue under the laws of Washington. Moreover, the plaintiff contended that the Supreme Court's decision in Hanna v. Plumer changed the rule which theretofore prevailed under Woods v. Interstate Realty Company so as to make Federal Rule 17(b) regarding capacity of a plaintiff corporation paramount in determining whether the foreign corporation had capacity to sue in federal court in California, even though the provisions of California law were to the contrary.

The court in *Power City* decided that California law should be applied so as to deny the foreign corporation a forum in federal court, notwithstanding the provisions of Federal Rule 17(b), relying primarily on the strong public policy inherent in the California statutes regarding the licensing of contractors, which statutes were intended to protect the public against dishonesty and incompetence in the administration of the contracting business and in the performance of contracts. In this regard the court in *Power City* seems to have adopted the test suggested by Mr. Justice Harlan in his concurring opinion in Hanna v. Plumer, in which he stated:

> To my mind the proper line of approach in determining whether to apply a state or federal rule, whether "substantive" or "procedural," is to stay close to basic principles by inquiring if the choice of rule would substantially affect those primary decisions respecting human conduct which our constitutional system leaves to state regulation. If so, Erie and the Constitution require that the state rule prevail, even in the face of a conflicting federal rule. Hanna v. Plumer, 380 U.S. 460, 475, 85 S.Ct. 1136, 1146, 14 L.Ed.2d 8, 19 (1965) (footnotes omitted).

This Court feels that the decision in *Power City* is completely distinguishable from the instant case, since this Court is concerned with the application of Rule 13(a) rather than Rule 17(b). It is apparent that the federal policy considerations behind Rule 13(a) are quite different than those applicable to Rule 17(b). Indeed, the court in *Power City* recognized that Rule 17(b) was inherently non-uniform in application, and that the competing interests in *Power City* were not really between the application of the Federal Rule and California law, but rather between California law and Washington law. The court said:

> To begin with, the primary concern of the court in Hanna v. Plumer was "the threat to the goal of uni-

formity of federal procedure posed by the decision below." Id. at 463, 85 S.Ct. at 1139. Here, we are dealing with Rule 17(b), which by referring to the laws of the state of organization of a corporation is inherently non-uniform in application. The competing interests here are really not between California and the federal rules, but between California and Washington, with all significant aspects of the transaction taking place in California. Power City Communications, Inc. v. Calaveras Telephone Co., 280 F.Supp. 808, 812 (E.D.Cal. 1968).

It is the opinion of this Court that the federal policies inherent in Rule 13(a) are wholly different than those underlying Rule 17(b), with which the court in *Power City* was confronted. Rule 13(a) is designed to prevent multiple litigation and to promote judicial efficiency in the handling of disputes. It is difficult to conceive of a situation where this policy would be more applicable than that present in the instant case. During colloquy between the Court and counsel for both parties on argument of this motion, counsel stated to the Court that all of the issues raised by Propulsion's counterclaim would be litigated in connection with the principal complaint of Avondale, regardless of the presence of the counterclaim. To require the parties to relitigate these issues for purposes of determining the merits of Propulsion's counterclaim in some other forum would defy basic common sense and frustrate the strong federal policies and interests incorporated into the provisions of Rule 13(a).

Strong support for this view of the distinction between the applicability of Rule 13(a) and Rule 17(b) appears in the 1969 decision of the United States Court of Appeals for the Fourth Circuit in Tolson v. Hodge, 411 F.2d 123 (4th Cir. 1969). This case, which did involve the application of a compulsory counterclaim under Rule 13(a) and the applicability of the rule of Hanna v. Plumer when there was a conflicting state rule, concluded that Rule 13(a) should govern, and that the strong federal policy against multiplicity of litigation would be significantly undermined if after commencement of suit, Rule 13 (a) where subordinated to the state rules governing capacity incorporated by Rule 17(b). The court said:

We start with the proposition that jurisdiction—both in the sense of diversity of citizenship, together with requisite amount in controversy, and diversity between parties having capacity to sue and be sued—was initially established; and we are mindful of the admonition of the Supreme Court that "[o]ne of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings, an area in which federal courts have traditionally exerted strong inherent power, completely aside from the powers Congress expressly conferred in the Rules" Hanna v. Plumer, 380 U.S. 460, 472–473, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965), quoting, Lumbermen's Mut. Cas. Co. v. Wright, 322 F.2d 759, 764 (5 Cir. 1963). Granted initial jurisdiction, this strong policy of uniformity, and the equally strong policy of Rule 13(a) to prevent a multiplicity of litigation arising out of a single transaction or occurrence except when full justice cannot be done, would be significantly undermined if, after commencement of suit, Rule 13(a) were subordinated to Rule 17(b) and the state rules governing capacity which it incorporates. Sufficient scope is assigned to Rule 17(b) when it is permitted to operate only when suit is initially instituted. But once a district court properly exercises jurisdiction to determine a cause of action, such procedural matters as the assertion of counterclaims

should be governed by the specific Federal Rules pertaining thereto without further reference to state law. Tolson v. Hodge, 411 F.2d 123, 127 (4th Cir. 1969).

There is another equally important distinction between the facts present in *Power City* and those in the instant case, and that is the differences in the relative interests inherent in application of state law vis-a-vis the Federal Rules in two different factual situations. In *Power City* the California statute was one regulating businesses and professions, rather than foreign corporations, and provided that no person engaging in the business or acting as a contractor might ever bring an action in any court in the state for the collection of compensation due under the performance of an act of contract without alleging and proving that he was a duly licensed contractor *at all times* during the performance of the act or the contract. The court in *Power City* found that this was not a mere housekeeping statute, but was designed to protect the public against dishonest and incompetent contractors, and incorporated a strong public policy. Thus, in *Power City* the contractor, not having been licensed at the time of the performance of his contract would forever be prohibited from bringing an action. This is to be contrasted with the Louisiana statute under which, even in Louisiana State Courts, the party asserting the counterclaim in this instance, Propulsion, could at any time gain the right to assert a claim in Louisiana courts merely by properly becoming registered to do business before asserting the claim. Thus we are faced with the distinction between an absolute prohibition asserting a strong public policy in the California case, as opposed to a conditional prohibition designed for "housekeeping" purposes in the Louisiana statutes.

In summary, this Court feels that the instant situation comes squarely within the holding of Hanna v. Plumer, and, indeed, could meet the test suggested by Mr. Justice Harlan in his concurring opinion. The Court is of the opinion that manifest injustice would be done by granting the motion to dismiss Propulsion's counterclaim in this factual and legal situation.

As stated earlier, because of this Court's decision with regard to the application of Rule 13(a), it is not essential that the Court rule on the question of whether Avondale has discharged its burden of showing that Propulsion has transacted such business in Louisiana during the applicable period as to have required Propulsion to become qualified under the Louisiana Foreign Corporation Law. The Court has, however, examined the affidavits filed by Avondale, its interrogatories propounded to Propulsion, along with the answers thereto, and based on consideration thereof, the Court concludes that Avondale has not adequately discharged the burden incumbent upon it in factually showing that Propulsion had transacted such business in Louisiana as to have required Propulsion to qualify under Louisiana law. To the contrary, it is the Court's opinion that all of Propulsion's activities in Louisiana were in pursuance of interstate commerce, and, therefore, under the prevailing jurisprudence such activities would not have required it to qualify under Louisiana law as a prerequisite to asserting a demand in Louisiana under the provisions of Louisiana Revised Statutes 12:314. See, LeFebure Corporation v. Lefebure, Incorporated, 284 F.Supp. 617 (E.D.La.1968).

Accordingly, and for the foregoing reasons, the plaintiff's motion to dismiss the counterclaim is hereby denied.